[861 NE2d 81, 828 NYS2d 266]

In the Matter of MERSCORP, INC., et al., Respondents, v EDWARD P. ROMAINE, as Clerk of the County of Suffolk, et al., Appellants, et al., Defendant.

Argued November 15, 2006; decided December 19, 2006

**POINTS OF COUNSEL**

*Cahn & Cahn, LLP,* Melville (*Richard C. Cahn* and *Daniel K. Cahn* of counsel), for appellants. I. MERS instruments are not "conveyances" within the meaning of Real Property Law §§ 290 and 291, because no interest in the subject property or in the underlying loan is conveyed to MERS, although it is designated as the "mortgagee." (*Mortgage Elec. Registration Sys., Inc. v Burek,* 4 Misc 3d 1030[A], 2004 NY Slip Op 51135[U]; *Kluge v Fugazy,* 145 AD2d 537; *Merritt v Bartholick,* 36 NY 44; *Flyer v*

*Sullivan,* 284 App Div 697; *Beak v Walts,* 266 App Div 900; *Manne v Carlson,* 49 App Div 276; *Chimart Assoc. v Paul,* 66 NY2d 570; *Nau v Vulcan Rail & Constr. Co.,* 286 NY 188, 287 NY 630.) II. MERS does not qualify as a "mortgagee." Therefore, the duty of respondent Edward P. Romaine to record mortgages, which is ministerial only to the extent that such instruments are presented "as a conveyance *perfect in form,*" was not breached. (*Putnam v Stewart,* 97 NY 411; *Baccari v De Santi,* 70 AD2d 198; *Jones v Beame,* 45 NY2d 402; *Matter of Abrams v New York City Tr. Auth.,* 39 NY2d 990.) III. MERS mortgages are not "mortgages" under New York law because they do not give notice of the identity of the true mortgagee, they falsely identify the mortgagee, and they circumvent the public recording system. (*Coco v Ranalletta,* 189 Misc 2d 535; *V & D Realty USA Corp. v Mitso Group,* 240 AD2d 562; *Federal Natl. Mtge. Assn. v Levine-Rodriguez,* 153 Misc 2d 8; *Andy Assoc. v Bankers Trust Co.,* 49 NY2d 13.) IV. Naming a nominee for the original lender "and lender's successors and assigns" is ineffective and against public policy. (*Weltman v Kotlar,* 124 App Div 494; *Moore v Leaseway Transp. Corp.,* 65 AD2d 697; *Andy Assoc. v Bankers Trust Co.,* 49 NY2d 13.) V. The county clerk can properly index MERS mortgages under the name of the original lender. (*People ex rel. Oaklawn Corp. v Donegan,* 226 NY 84.) VI. MERS's procedures inhibit consumers seeking to exercise their remedies under federal and state statutes as victims of "high cost loans." VII. The MERS system deprives the public of revenues intended by the Legislature for the benefit of the public. VIII. MERS's discharges of assigned mortgages and discharges of mortgages where ownership of the loans has been transferred are not entitled to be recorded; MERS's standing in foreclosure proceedings is also questionable. (*Mortgage Elec. Registration Sys., Inc. v Burek,* 4 Misc 3d 1030[A], 2004 NY Slip Op 51135[U]; *Mortgage Elec. Registration Sys., Inc. v Estrella,* 390 F3d 522.)

*Hiscock & Barclay, LLP,* Buffalo (*Charles C. Martorana* and *Samuel J. Burruano, Jr.,* of counsel), for respondents. I. MERS instruments are conveyances under New York law. (*Gibson v Thomas,* 180 NY 483; *Finn v Wells,* 135 Misc 53; *W.L. Dev. Corp. v Trifort Realty,* 44 NY2d 489; *People v Prince,* 110 Misc 2d 55; *Williams v Wisner Bldg. Co., Inc.,* 121 Misc 32, 208 App Div 783; *Merritt v Bartholick,* 36 NY 44; *Kluge v Fugazy,* 145 AD2d 537; *Kellogg v Smith,* 26 NY 18; *Syracuse Sav. Bank v Merrick,* 182 NY 387; *Fryer v Rockefeller,* 63 NY 268.) II. MERS is a proper "mortgagee" and county clerks

are obligated to record MERS instruments. (*Putnam v Stewart,* 97 NY 411.) III. The MERS system complies with the New York Real Property Law and provides public notice of liens on property. (*Witter v Taggart,* 78 NY2d 234; *Andy Assoc. v Bankers Trust Co.,* 49 NY2d 13; *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471; *Albany County Sav. Bank v McCarty,* 149 NY 71; *Matter of Wadsworth,* 27 Misc 264.) IV. The designation of MERS as nominee is effective and does not violate public policy. (*Schuh Trading Co. v Commissioner of Internal Revenue,* 95 F2d 404; *Munoz v Wilson,* 111 NY 295; *Wood v Travis,* 231 App Div 331; *Preston v Albee,* 120 App Div 89; *In re Cushman Bakery,* 526 F2d 23, cert denied sub nom. *Agger v Seaboard Allied Milling Corp.,* 425 US 937; *Fairbanks Capital Corp. v Nagel,* 289 AD2d 99; *Amherst Factors v Kochenburger,* 4 NY2d 203; *Mutual Life Ins. Co. v Nicholas,* 144 App Div 95; *In re Fried Furniture Corp.,* 293 F Supp 92, 407 F2d 360; *In re Lehrenkrauss,* 6 F Supp 687.) V. New York law compels county clerks to index MERS as a party to the MERS instruments. (*Tomlinson v Board of Educ. of Lakeland Cent. School Dist. of Shrub Oak,* 223 AD2d 636, 88 NY2d 808; *Federal Natl. Mtge. Assn. v Levine-Rodriguez,* 153 Misc 2d 8; *Baccari v De Santi,* 70 AD2d 198.) VI. The MERS system respects the rights of consumers. VII. The MERS system does not impact appellants' revenues. VIII. Appellants' diversionary reference to alleged issues in foreclosure proceedings misstates governing New York law, interjects issues which are dehors the record, and misstates or presents incomplete information regarding foreclosure proceedings venued in the state of Florida. (*Fryer v Rockefeller,* 63 NY 268; *Andy Assoc. v Bankers Trust Co.,* 49 NY2d 13; *Airlines Reporting Corp. v S & N Travel,* 238 AD2d 292; *Fairbanks Capital Corp. v Nagel,* 289 AD2d 99; *Mortgage Elec. Registration Sys., Inc. v Burek,* 4 Misc 3d 1030[A], 2004 NY Slip Op 51135[U]; *Mortgage Elec. Registration Sys., Inc. v Estrella,* 390 F3d 522; *Indiana Gas Co., Inc. v Home Ins. Co.,* 141 F3d 314; *Northern Trust Co. v Bunge Corp.,* 899 F2d 591.)

*Bainton McCarthy LLC,* New York City (*John G. McCarthy* of counsel), for Mortgage Bankers Association, amicus curiae. I. MERS instruments enhance efficiency in the primary and secondary markets for residential, multifamily and commercial mortgages. (*Leader v Dinkler Mgt. Corp.,* 20 NY2d 393; *Amherst Factors v Kochenburger,* 4 NY2d 203; *Mutual Life Ins. Co. v Nicholas,* 144 App Div 95; *In re Fried Furniture Corp.,* 293 F

Supp 92, 407 F2d 360.) II. To afford the County Clerk discretion to block the recording and indexing of MERS instruments would deprive the primary and secondary mortgage markets of the benefits of the MERS system.

*Bainton McCarthy LLC,* New York City (*J. Joseph Bainton* of counsel), for American Land Title Association, amicus curiae. I. MERS instruments are entitled to be recorded. The MERS system is not unorthodox. II. To afford county clerks discretion to reject MERS instruments presented for recording will adversely affect mortgage markets. (*Putnam v Stewart,* 97 NY 411; *Matter of Westminister Hgts. Co.,* 107 App Div 577, 185 NY 539; *People ex rel. Title Guar. & Trust Co. v Grifenhagen,* 209 NY 569; *People ex rel. Frost v Woodbury,* 213 NY 51; *Matter of Natural Resources Defense Council v New York City Dept. of Sanitation,* 83 NY2d 215.) III. This case involves the statutory duty to record MERS instruments. (*Airlines Reporting Corp. v S & N Travel,* 238 AD2d 292; *Fairbanks Capital Corp. v Nagel,* 289 AD2d 99.)

*Kenneth M. Scott,* Washington, D.C., and *Kenton Hambrick,* McLean, Virginia, for Federal National Mortgage Association and another, amici curiae. I. Reversing the Appellate Division's decision and order would create inefficiency in the mortgage industry, increase costs of credit and impair federal housing policy. II. MERS generates significant benefits for borrowers. III. Granting county clerks discretion to refuse to record MERS instruments would disrupt the New York mortgage market and harm all interested parties. (*Putnam v Stewart,* 97 NY 411; *Matter of Westminster Hgts. Co.,* 185 NY 539; *People ex rel. Title Guar. & Trust Co. v Grifenhagen,* 209 NY 569; *People ex rel. Frost v Woodbury,* 213 NY 51; *W.L. Dev. Corp. v Trifort Realty,* 44 NY2d 489.)

*Meghan Faux,* Brooklyn, *Josh Zinner, Nina F. Simon,* Washington, D.C., admitted pro hac vice, *Seth Rosebrock,* Washington, D.C., admitted pro hac vice, *Fishman & Neil, LLP,* New York City (*James B. Fishman* of counsel), *Bromberg Law Office, P.C.* (*Brian L. Bromberg* of counsel), *April Carrie Charney,* Jacksonville, Florida, admitted pro hac vice, *Ruhi Maker,* Rochester, *Donna Dougherty,* Rego Park, *Dianne Woodburn, Diane Houk,* New York City, *Pamela Sah, Sara Ludwig, Oda Friedheim,* Kew Gardens, *Margaret Becker,* Staten Island, and *Treneeka Cusack,* Buffalo, for South Brooklyn Legal Services and others, amici curiae. I. The

MERS system was designed without regard to consumers' rights. II. MERS's claims that the MERS system is beneficial to consumers are unsupported. III. Homeowners have a right to know who owns their loans. (*Miguel v Country Funding Corp.,* 309 F3d 1161; *Mortgage Elec. Registration Sys., Inc. v Estrella,* 390 F3d 522.) IV. The MERS system causes significant confusion among borrowers and has a particularly detrimental impact on the elderly and other vulnerable borrowers frequently victimized by predatory lenders. V. The public has a significant and enduring interest in preserving and protecting the free public databases created by the land and court records of this nation. VI. MERS's subversion of the public policy behind public recordings costs county and city clerks over a billion dollars. VII. MERS lacks standing to bring foreclosure actions in its name. (*Kluge v Fugazy,* 145 AD2d 537.)

*Hamburger, Maxson, Yaffe, Wishod & Knauer, LLP,* Melville (*Richard Hamburger, David N. Yaffe* and *Eugene L. Wishod* of counsel), for County Clerk of the County of Albany and others, amici curiae. County clerks are required by statute to reject instruments presented for recording which fail to comply with all governing statutory requirements. (*Witter v Taggart,* 78 NY2d 234; *Andy Assoc. v Bankers Trust Co.,* 49 NY2d 13; *Putnam v Stewart,* 97 NY 411; *Hartwell v Riley,* 47 App Div 154; *Olmsted v Dennis,* 77 NY 378; *Bryant v Town of Randolph,* 133 NY 70; *People ex rel. Welch v Nash,* 62 NY 484; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451.)

### OPINION OF THE COURT

PIGOTT, J.

We are asked to decide on this appeal whether the Suffolk County Clerk[1] is compelled to record and index mortgages, assignments of mortgage and discharges of mortgage, which name Mortgage Electronic Registration Systems, Inc. the lender's nominee or mortgagee of record.

Petitioners, MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc. (collectively MERS), commenced this hybrid proceeding in the nature of mandamus to compel the Clerk to record and index the instruments, and to declare them acceptable for recording and indexing.

Supreme Court denied in part petitioners' motion for summary judgment and granted in part the cross motion of

---

**1.** Edward P. Romaine resigned as County Clerk December 31, 2005. Judith A. Pascale is currently the Acting County Clerk.

respondents, the Suffolk County Clerk and the County of Suffolk (collectively the County), holding that although the Clerk must record and index the MERS mortgage when presented, the Clerk may refuse to record a MERS assignment and discharge, because those instruments violate the "factual mandates" of section 321 (3) of the Real Property Law.

The Appellate Division reversed so much of Supreme Court's ruling as relates to the assignments and discharges, finding "no valid distinction between MERS mortgages and MERS assignments or discharges for the purpose of recording and indexing" (24 AD3d 673, 674-675 [2d Dept 2005]). This Court granted leave and we now affirm.

In 1993, the MERS system was created by several large participants in the real estate mortgage industry[2] to track ownership interests in residential mortgages. Mortgage lenders and other entities,[3] known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.

The initial MERS mortgage is recorded in the County Clerk's office with "Mortgage Electronic Registration Systems, Inc." named as the lender's nominee or mortgagee of record on the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system.[4] In the MERS system, the mortgagor is notified of transfers of servicing rights pursuant to the Truth in Lending Act, but not necessarily of assignments of the beneficial interest in the mortgage.

---

**2.** Among the entities creating MERS were the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, and the Mortgage Bankers Association of America.

**3.** Members of the MERS system also include entities such as insurance companies, title companies and banks.

**4.** If a MERS member transfers ownership interest or servicing rights in a mortgage loan to a non-MERS member, an assignment from the MERS member to the non-MERS member is recorded in the County Clerk's office and the loan is deactivated within the MERS system.

In April 2001, in response to an informal opinion of the Attorney General, which concluded that recording a MERS instrument violates Real Property Law § 316 and frustrates the legislative intent of the recording provisions (2001 Ops Atty Gen No. 2001-2), the Suffolk County Clerk ceased recording the MERS instruments. This proceeding ensued.

▉ The County contends that the MERS mortgage is improper because that mortgage names MERS, an entity that has no interest in the property or loan, as the "nominee" for the lender. Thus, the County contends MERS is not a proper "mortgagee" and the document created cannot be considered a proper "conveyance" for purposes of the recording statute. We disagree.

Section 291 of the Real Property Law provides, in pertinent part, that:

> "[a] conveyance of real property, within the state, on being duly acknowledged by the person executing the same, or proved as required by [the Real Property Law], and such acknowledgment or proof duly certified when required by [such law], may be recorded in the office of the clerk of the county where such real property is situated, and such county clerk *shall*, upon the request of any party, on tender of the lawful fees therefor, record the same in his said office" (emphasis added).

Real Property Law § 316-a, which pertains exclusively to Suffolk County, provides that

> "[e]very instrument affecting real estate or chattels real, situated in the county of Suffolk, which shall be, or which shall have been recorded in the office of the clerk of said county on and after the first day of January, nineteen hundred fifty-one, *shall* be recorded and indexed pursuant to the provisions of this act" (§ 316-a [1] [emphasis added]).

Thus, sections 291 and 316-a of the Real Property Law impose upon the Suffolk County Clerk the ministerial duty of recording and indexing instruments affecting real property (*see* Real Property Law § 290 [3]; §§ 291, 316-a [1], [2]; § 321 [1]; County Law § 525 [1]). The Clerk lacks the statutory authority to look beyond an instrument that otherwise satisfies the limited requirements of the recording statute (*see Putnam v Stewart*, 97 NY 411 [1884]). Therefore, the County Clerk must accept the MERS mortgage when presented for recording.

With respect to the MERS assignments and discharges of mortgage, the County argues that by requiring the Clerk to record the instrument, the Clerk is recording a document that ignores the mandates prescribed by Real Property Law § 321.

Section 321 (1) (a) provides that where it does not appear from the record that any interest in a mortgage has been assigned, a certificate of satisfaction must be signed by the mortgagee or the mortgagee's personal representative in order for the recording officer to mark the record of the mortgage as "discharged." Where it appears from the record that a mortgage has been assigned, the recording officer cannot mark the record of that mortgage with the word "discharged" unless a certificate is signed by "the person who appears from the record to be the last assignee" of the mortgage, or his or her personal representative (Real Property Law § 321 [1] [b]). As the nominee for the mortgagee of record or for the last assignee, MERS acknowledges the instrument and therefore, the County Clerk is required to file and record the instruments.

Other provisions are not to the contrary. Under section 321 (2) (b), the Clerk is required to record "every other instrument relating to a mortgage," if that instrument is properly acknowledged or proved in a manner entitling a conveyance to be recorded. Such instruments include "certificates purporting to discharge a mortgage" that are signed by persons other than those specified in Real Property Law § 321 (1).

Further, section 321 (3) of the Real Property Law provides:

> "Every certificate presented to the recording officer shall be executed and acknowledged or proved in like manner as to entitle a conveyance to be recorded. If the mortgage has been assigned, in whole or in part, the certificate shall set forth the date of each assignment in the chain of title of the person or persons signing the certificate, the names of the assignor and assignee, the interest assigned, and, if the assignment has been recorded, the book and page where it has been recorded or the serial number of such record; or if the assignment is being recorded simultaneously with the certificate of discharge, the certificate of discharge shall so state. If the mortgage has not been assigned *of record*, the certificate shall so state" (emphasis added).

Notably, section 321 (3) does not call for the unrecorded MERS assignments to be listed on the MERS discharge. Rather,

under the statute, the discharge is required either to list the assignment by the name of the assignor and assignee, the interest assigned, and the book and page number, where recorded, or, if the assignment has not been recorded, to "so state."

The legislative history of the statute supports this interpretation. In 1951, Real Property Law § 321 (3) was amended to, among other things, insert the term "of record" (L 1951, ch 159, § 1). The relevant memoranda submitted to the Legislature in connection with the amendment indicate that the term was inserted to "correct a difficulty" in complying with the statute (*see e.g.* Mem in Support of Exec Secretary and Director of Research of Law Rev Commn, Bill Jacket, L 1951, ch 159). Prior to the amendment, the statute required that a discharge certificate presented to the County Clerk either list all of the assignments in the chain of title or state that the mortgage was unassigned.[5] However, problems developed when an assignment, known to the person executing the discharge, was not in the chain of title. In those situations, the person executing the discharge would make the untrue statement that the mortgage was unassigned. Thus, the Legislature amended the statute allowing the discharge certificate to either list the assignments in the chain of title or to state that the assignment has not been made "of record." The MERS discharge complies with the statute by stating that the "mortgage has not been further assigned *of record*" (emphasis added) and, therefore, the County Clerk is required to accept the MERS assignments and discharges of mortgage for recording.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

CIPARICK, J. (concurring). I am constrained to agree with the result reached by the majority opinion. However, I write independently to highlight the narrow breadth of this holding and to point out that this issue may be ripe for legislative consideration.

I concur with the majority that the Clerk's role is merely ministerial in nature and that since the documents sought to be recorded appear, for the most part, to comply with the recording statutes, MERS is entitled to an order directing the Clerk to ac-

---

**5.** The purpose of such requirement was to facilitate the work of the recording officer in marking the record of the mortgage.

cept and record the subject documents. I wish to note, however, that to the extent that the County and various amici argue that MERS has violated the clear prohibition against separating a lien from its debt and that MERS does not have standing to bring foreclosure actions, those issues remain for another day (*see e.g. Merritt v Bartholick*, 36 NY 44, 45 [1867] ["a transfer of the mortgage without the debt is a nullity, and no interest is acquired by it"]).

In addition to these substantive issues, a plethora of policy arguments have surfaced during the pendency of this proceeding. For instance, if MERS succeeds in its goal of monopolizing the mortgage nominee market, it will have effectively usurped the role of the county clerk that inevitably would result in a county's recording fee revenue being substantially diverted to a private entity. Additionally, MERS's success will arguably detract from the amount of public data available concerning mortgage ownership that otherwise offers a wealth of statistics that are used to analyze trends in lending practices. Another concern raised is that, once an assignment of the mortgage is made, it can be difficult, if not impossible, for a homeowner to find out the true identity of the loan holder. Amici who submitted briefs in favor of the County argue that this can effectively insulate a noteholder from liability and further that it encourages predatory lending practices.

Unquestionably there is considerable public value in allowing seamless assignments of mortgages in a secondary market. However, whether this benefit will outweigh the negative consequences cannot be ascertained by this Court. Thus, as the recording act, which as relevant here has not been substantially amended in the last 50 years, could not have envisioned such a system nor its ancillary impacts, I feel that such a decision is best left in the hands of the Legislature.

Chief Judge KAYE (dissenting in part). In 1993, members of the real estate mortgage industry created MERS, an electronic registration system for mortgages. Its purpose is to streamline the mortgage process by eliminating the need to prepare and record paper assignments of mortgage, as had been done for hundreds of years. To accomplish this goal, MERS acts as nominee and as mortgagee of record for its members nationwide and appoints itself nominee, as mortgagee, for its members' successors and assigns, thereby remaining nominal mortgagee of record no matter how many times loan servicing, or the

mortgage itself, may be transferred. MERS hopes to register every residential and commercial home loan nationwide on its electronic system.

But the MERS system, developed as a tool for banks and title companies, does not entirely fit within the purpose of the Recording Act, which was enacted to "protect the rights of innocent purchasers . . . without knowledge of prior encumbrances" and to "establish a public record which would furnish potential purchasers with notice, or at least 'constructive notice', of previous conveyances" (*Andy Assoc. v Bankers Trust Co.*, 49 NY2d 13, 20 [1979]; *see Witter v Taggart*, 78 NY2d 234, 238 [1991]). It is the incongruity between the needs of the modern electronic secondary mortgage market and our venerable real property laws regulating the market that frames the issue before us.

I

The Suffolk County Clerk, pursuant to the Recording Act, has a duty to record conveyances that are "entitled to be recorded" (Real Property Law § 316-a [5]), and to discharge mortgages when presented with a validly executed and acknowledged certificate of discharge (Real Property Law § 321). Thus, as part of this ministerial duty, the Clerk is called upon to examine an instrument to see that it is, facially, a "conveyance" of real property or to see that the certificate of discharge complies with the statutory mandates.

> "The performance of his uniform clerical duty requires him to compare the instruments which come to his possession for record . . . and certify as to the identity of their physical contents. Such a certificate does not involve the expression of an opinion, but calls for the statement of a fact capable of absolute demonstration" (*Putnam v Stewart*, 97 NY 411, 418 [1884]).

When presented with a MERS mortgage to record, the Clerk is able to discern from the face of the instrument that MERS has been appointed, as nominee, "mortgagee of record." As the instrument appears to reflect a valid conveyance (Real Property Law § 290 [3]), the Clerk is required to record the instrument in MERS' name "as a nominee for Lender" (Real Property Law § 291). Given that the identity of the actual lender is ascertainable from the mortgage document itself—indeed, the use of a nominee as the equivalent of an agent for the lender is appar-

ent, and not unusual—I concur with the majority that the Clerk is obligated to record MERS mortgages.*

When presented with a certificate of discharge, however, the Clerk has the duty to examine the mortgage's prior assignments. The Clerk collects fees precisely for this purpose (Real Property Law § 321 [3] ["the fee or fees which the recording officer is entitled to receive for filing and entering a certificate of discharge of a mortgage and examining assignments of such mortgage shall be payable with respect to each mortgage"]). Section 321 (3) of the Real Property Law further provides:

> "Every certificate presented to the recording officer shall be executed and acknowledged or proved in like manner as to entitle a conveyance to be recorded. *If the mortgage has been assigned, in whole or in part, the certificate shall set forth the date of each assignment* in the chain of title of the person or persons signing the certificate, the names of the assignor and assignee, the interest assigned, *and, if the assignment has been recorded, the book and page where it has been recorded* or the serial number of such record; or *if the assignment is being recorded simultaneously with the certificate of discharge, the certificate of discharge shall so state. If the mortgage has not been assigned of record, the certificate shall so state*" (emphasis added).

"[W]here the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (*Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 107 [1997] [emphasis and citations omitted]). Plainly, the statute requires *all* assignments of the mortgage to be listed on the certificate of discharge, whether recorded or not. The statute first sets out this general requirement, then it addresses each possible scenario in turn: *if* the assignment was recorded, the Clerk must enter the book and page; *if* the assignment of mortgage is being recorded simultaneously,

---

* I also agree that the issues concerning the underlying validity of the MERS mortgage instrument—in particular, whether its failure to transfer beneficial interest renders it a nullity under real property law, whether it violates the prohibition against separating the note from the mortgage, and whether MERS has standing to foreclose on a mortgage—are best left for another day. Although MERSCORP initially requested a declaratory judgment that the MERS instruments were "lawful in all respects" (which Supreme Court denied) the instruments' validity has not yet been addressed.

the certificate shall so state; *if* the assignment was not recorded, the certificate similarly shall so state. To read the statute as providing that the certificate "either" list the recorded mortgage "or" simply state that the assignment has not been recorded renders the language of the preceding sentences superfluous and the clause regarding the listing of recording details "if recorded" nonsensical.

"[T]he clearest indicator of legislative intent is the statutory text" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). The Court need not look to legislative history when the plain meaning of the statute is clear, and surely should not look to legislative history to override the plain meaning of the statute, as the majority now does.

Here, moreover, the legislative history of section 321 is inapposite. Real Property Law § 321 was amended in 1951 to ameliorate the situation "where assignments are known by the signing party to have existed but such assignments are not in his chain of title because the mortgage has been reassigned to the assignor," such as when "a mortgage has been pledged to secure a loan and on repayment . . . has been reassigned to the mortgagee without the assignment ever having been recorded" (Recommendation of Law Rev Commn, Bill Jacket, L 1951, ch 159, at 20; *see also* Mem by Exec Secretary and Director of Research of Law Rev Commn, Bill Jacket, L 1951, ch 159, at 11). Thus, the situation the amendment addressed was when a mortgagee's assigned, unrecorded mortgage was reassigned *back to the mortgagee,* and the mortgage was then transferred by the mortgagee to a subsequent holder or discharged by the original mortgagee himself. In such a case, "there appears to be no reason for requiring a statement that the mortgage has not been assigned [as] the certificate is executed by the *original mortgagee*" (Recommendation of Law Rev Commn, Bill Jacket, L 1951, ch 159, at 20 [emphasis added]), or transferred by the original assignor after it had been assigned back to him (*see* Report of Comm on Real Property Law, Bill Jacket, L 1951, ch 159, at 9).

Under the MERS system, by contrast, assignments are made from one lender, to another lender, to another lender, and so on down the line. The 1951 amendment, which assumed that the mortgagee would be discharging the reassigned mortgage, or that a subsequent holder would discharge it unaware that the previous owner had assigned away and been reassigned the mortgage, is thus inapplicable to the issue under review.

## II

The MERS system raises additional concerns that should not go unnoticed.

The benefits of the system to MERS members are not insubstantial. Through use of MERS as nominee, lenders are relieved of the costs of recording each mortgage assignment with the County Clerk, instead paying minimal yearly membership fees to MERS. Transfers of mortgage instruments are faster, allowing for efficient trading in the secondary mortgage market; a mortgage changes hands at least five times on average.

Although creating efficiencies for its members, there is little evidence that the MERS system provides equivalent benefits to home buyers and borrowers—and, in fact, some evidence that it may create substantial disadvantages. While MERS necessarily opted for a system that tracks both the beneficial owner of the loan and the servicer of the loan, its 800 number and Web site allow a borrower to access information regarding only his or her loan servicer, not the underlying lender. The lack of disclosure may create substantial difficulty when a homeowner wishes to negotiate the terms of his or her mortgage or enforce a legal right against the mortgagee and is unable to learn the mortgagee's identity. Public records will no longer contain this information as, if it achieves the success it envisions, the MERS system will render the public record useless by masking beneficial ownership of mortgages and eliminating records of assignments altogether. Not only will this information deficit detract from the amount of public data accessible for research and monitoring of industry trends, but it may also function, perhaps unintentionally, to insulate a noteholder from liability, mask lender error and hide predatory lending practices. The county clerks, of course, are concerned about the depletion of their revenues—allegedly over one million dollars a year in Suffolk County alone.

Admittedly we do not know, at this juncture, the extent to which these concerns will be realized. But it would seem prudent to call to the attention of the Legislature what is at least a disparity between the relevant statute—now 55 years old—and the burgeoning modern-day electronic mortgage industry.

Judges Rosenblatt, Graffeo, Read and Smith concur with Judge Pigott; Judge Ciparick concurs in result in a separate opinion; Chief Judge Kaye dissents in part in another opinion.

Order affirmed, with costs.