COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-088-CV

 

 

MORTGAGE ELECTRONIC                                                     APPELLANT

REGISTRATION SYSTEMS, AS 

NOMINEE FOR LENDER AND 

LENDER=S SUCCESSORS AND 

ASSIGNS                                                                                           

 

                                                   V.

 

KIM
YOUNG AND ALL                                                           APPELLEES

OCCUPANTS OF 289 CR 4764,


BOYD, TEXAS 76023

 

                                              ------------

 

              FROM THE COUNTY COURT AT LAW OF WISE COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellant Mortgage Electronic Registration
Systems, as Nominee for Lender and Lender=s
Successors and Assigns, (AMERS@)
appeals from the judgment of the county court at law of Wise County on its
forcible detainer action against Appellees Kim Young and All Occupants of 289
CR 4764, Boyd, Texas 76023 (AYoung@).  MERS brings two issues on appeal.  In its first issue, MERS argues that the
trial court erred by granting judgment for possession in favor of Young on the
basis of estoppel because the defense of estoppel cannot control the outcome in
a forcible detainer action.  In its
second issue, MERS argues that the trial court erred by granting judgment for
possession in favor of Young because the evidence showed that MERS owned the
property and had a superior right of possession of the property.  Because we hold that the evidence does not
demonstrate that MERS owned the property at the time of its forcible detainer
action and that the county court did not have jurisdiction to determine the
issue of possession because that determination rested on the resolution of
title, we reverse the judgment of the county court and render a judgment of
dismissal.








Young bought the property at issue in 2002.  She executed a note on the property, secured
by a deed of trust.  Home Loan
Corporation was listed on the deed of trust as the lender and MERS was named as
nominee.  The deed of trust noted that
MERS held legal title and had the right to foreclose and sell the
property.  The deed of trust did not
mention Wells Fargo Home Mortgage, Inc. (AWFHM@), and
no record of assignment of the note was introduced at the hearing on MERS=s
forcible detainer action, but Young alleged that she made her monthly mortgage
payments to WFHM in 2002 and 2003.

According to Young=s
testimony at the hearing in the county court, sometime in 2004, she sold the
property, and she obtained information from WFHM about how the buyers could
assume the debt.  She testified that she
followed the instructions given and paid an assumption fee and that she never
received any communication from WFHM that the assumption did not go through.  But she did not testify that she ever
received confirmation from WFHM that the assumption had gone through, and no
deed conveying the property to the buyers was introduced at the hearing.  Young=s
attorney had the sale contract with her at the hearing, but it was not introduced
into evidence.

Young testified that in 2005, she received notice
that Wells Fargo Bank, N.A. had procured insurance on the property in Young=s
name.  She stated that she then contacted
the insurance company and informed it of the sale of the property and the buyer=s
assumption of the note.

On January 3, 2006, unbeknownst to Young, a
substitute trustee conveyed the property to MERS after a nonjudicial
foreclosure sale.  The deed was recorded
in the Wise County records.  On January
12, 2006, MERS conveyed the property to the Secretary of the Department of
Housing and Urban Development (AHUD@).








In April and June of 2006, Standard Guaranty
Insurance Company sent letters to Young notifying her that it had paid Wells
Fargo Bank, N.A. for claims made under an insurance policy on the
property.  On August 30, 2006, WFHM sent
Young a notice that it was renewing the insurance on the property.

Young testified that when she received this
letter (which was after the nonjudicial foreclosure sale and the transfer of
the property to HUD), she contacted AWells
Fargo.@[2]  She testified that she was told that the
property had been abandoned by the buyers; the note was in default; foreclosure
proceedings had been commenced on January 3, 2006, but had not been finalized;
and she was still the owner of the property. 
She testified that an employee of AWells
Fargo@ agreed
to reinstate the note and send her the paperwork for reinstatement, but that
she never received the paperwork despite repeated telephone calls to AWells
Fargo@ and AWells
Fargo@
repeatedly telling her that the note could be reinstated.  Despite never receiving the paperwork, she
moved back onto the property and made repairs to it.








On May 10, 2007, HUD conveyed the property under a
deed without warranty to Wells Fargo Home MTGBPrudential
(AWFHMBPrudential@).  On June 27, 2007, a law firm acting on behalf
of Wells Fargo Bank, N.A. sent Young a notice to vacate the property.  When she refused, MERS filed a forcible
detainer action against her in the justice court.  After the justice court granted possession of
the property to MERS, Young appealed to the statutory county court.  There she entered a plea to the jurisdiction
and several affirmative defenses, including estoppel and a claim that the
foreclosure had not complied with statutory requirements.  At the conclusion of the hearing, the county
court stated that estoppel applied and that it was denying the detainer on that
ground.  The court=s
judgment for Young, however, did not state the specific grounds for denying MERS=s
forcible detainer.  MERS now appeals.

We consider MERS= second
issue first because it is dispositive.[3]  MERS argues that the trial court erred by
granting judgment for possession in favor of Young because the evidence showed
that MERS owned the property and had a superior right of possession of the
property.  Young argued in the county
court and in the alternative on appeal that the county court did not have
jurisdiction over the forcible detainer action because the court could not
determine whether MERS had a superior right to immediate possession without
determining title.  We agree with Young.








A forcible detainer action addresses only the
question of who is entitled to immediate possession of a premises.[4]  A person commits forcible detainer when the
person refuses to surrender possession of real property on demand and the
person is a tenant by sufferance.[5]  A plaintiff in a forcible detainer action
must present sufficient evidence of ownership to demonstrate a superior right
to immediate possession of the premises.[6]  A plaintiff does not, however, have to prove
ownership of the property; rather, a court may determine which party has a
superior right to possession without determining title when there exists a
landlord-tenant relationship between the parties.[7]  A court does not have to determine title in
such a case because the existence of the landlord-tenant relationship provides
a basis for determining the right to possession without resolving the issue of
who owns the property.[8]













In a forcible detainer case, the only issue that
may be determined is the right to actual possession; the issue of title to the
property cannot be adjudicated.[9]  The losing party in a forcible detainer action
brought in the justice court may appeal to the county court for a trial de
novo.[10]  The taking of such an appeal vacates the
judgment of the justice court.[11]  In an appeal from a justice court, the county
court does not have jurisdiction if the justice court did not have
jurisdiction, and justice courts do not have jurisdiction to decide issues of
title.[12]  Significantly, although the existence of a
title dispute will not deprive a justice court of jurisdiction in a forcible
detainer action, the court does not have jurisdiction when the right to
possession cannot be determined without resolving the title issue.[13]  Thus, the county court did not have
jurisdiction in this forcible detainer case if the court could not determine
the right to possession without determining title.








MERS based its claim for the right to possession
on an alleged landlord-tenant relationship created by a deed from the
substitute trustee=s sale and the provision in the
deed of trust that made Young a tenant at sufferance upon default and
foreclosure.  MERS submitted to the trial
court a copy of the deed of trust that secured the note to Young and listed
MERS as the nominal mortgagee for the lender and its successors and
assigns.  The deed of trust provided that
if Young defaulted on the note and the property was sold at a foreclosure sale under
the deed of trust, Young would become a tenant at sufferance.  This kind of provision in a deed of trust is
generally sufficient to establish a landlord-tenant relationship between the
mortgagor and the purchaser of the property at a foreclosure sale.[14]  MERS also introduced evidence of the
substitute trustee=s deed showing that it purchased
the property at a foreclosure sale.  MERS
argued in the county court that with this evidenceCthe
substitute trustee=s deed showing that MERS owned
the property after purchasing it at the foreclosure sale and the deed of trust
creating a landlord-tenant relationship between it and Young and showing that
Young was a tenant at sufferanceCthe
county court could have determined MERS=s right
to possession without determining title, despite Young=s
arguments with respect to the propriety of the foreclosure proceedings.[15]

But Young brought a plea to the jurisdiction,
disputing MERS=s assertion that it owned the
property. At the hearing, Young introduced two deeds executed after the
substitute trustee=s deed:  a deed conveying the property from MERS to
HUD and another deed conveying the property from HUD to WFHMBPrudential.  The deed from HUD does not mention MERS at
all, as nominee for WFHMBPrudential or in any other
capacity.  All the other documents MERS
introduced relating to this property did, however, specifically mention
MERS.  The deed of trust listed MERS, as
nominee for the lender, as the beneficiary of the instrument.  The substitute trustee=s deed
listed MERS, as nominee for the lender, as the mortgagee.  The deed to HUD listed MERS, Aas
nominee for [the] Lender,@ as the grantor.  But no evidence before the county court
indicated that WFHMBPrudential designated MERS to
act as its nominee with respect to this property after HUD conveyed it to WFHMBPrudential.








On appeal, MERS argues that it brought the
forcible detainer action on behalf of AWells
Fargo.@  It argues that it is a Abook
entry system@ as that term is defined in
section 51.0001 of the property code[16]
and contends that under the deed of trust, MERS could act on behalf of ALender
and Lender=s successors and assigns@ and
that WFHMBPrudential, as the current owner
of the property, is ALender=s
successor or assign with regard to the [p]roperty.@  Thus, MERS argues, it had authority to bring
this suit on behalf of WFHMBPrudential.








MERS did not introduce evidence in the county
court about the nature of its business, but it has been discussed by other
courts.  MERS was created for the purpose
of tracking ownership interests in residential mortgages.[17]  Entities such as mortgage lenders Asubscribe
to the MERS system and pay annual fees for the electronic processing and
tracking of ownership and transfers of mortgages.@[18]  These MERS members Acontractually
agree to appoint MERS to act as their common agent on all mortgages they
register in the MERS system.@[19]  When a mortgage is executed through a MERS
member and registered in the MERS system, it is recorded in the real property
records with MERS named on the instrument as nominee or mortgagee of record.[20]  While the mortgage is in effect, the original
lender may transfer the beneficial ownership or servicing rights on the
mortgage to another MERS member, with MERS tracking these electronic transfers;
these assignments are not recorded in the real property records.[21]  If a MERS member assigns its interest in a
mortgage to a non‑MERS member, this assignment is recorded in the real
property records and MERS deactivates the loan within its system.[22]

MERS has Ano
rights whatsoever to any payments made on account of such mortgage loans, to
any servicing rights related to such mortgage loans, or to any mortgaged
properties securing such mortgage loans.@[23]  MERS acts as the agent only for its members;
once a note is transferred out of the MERS system to a non-member, MERS cannot
act as the agent.[24]








The evidence in the county court showed that MERS
was named as nominee for Home Loan Corporation, the original lender on the
note.  After Young defaulted on the note,
MERS purchased the property at the substitute trustee=s sale
and subsequently conveyed the property to HUD. 
HUD later conveyed the property to WFHMBPrudential.  The record did not establish that WFHMBPrudential
was a member of MERS, that MERS was acting for WFHMBPrudential
in bringing the forcible detainer action, or that WFHMBPrudential=s
ownership of the property was the type of interest that could be registered
with MERS such that MERS could record the interest in its name in accordance
with the property code or bring this action.[25]








According to the property records of Wise County,
WFHMBPrudential
holds title to the property.  MERS does
not.  MERS did not assert in the county
court that WFHMBPrudential owned the property
under a deed from HUD or that it acted on behalf of WFHMBPrudential.  It asserted instead that MERS itself owned
the property under the substitute trustee=s deed
naming it as grantee Aas nominee for Lender and
Lender[']s Successors and Assigns.@  It stated that it was a nominee for ALender@ but did
not specify who ALender@ was or
show (or even assert) that it had any authority to bring a forcible detainer
action on behalf of WFHMBPrudential, the owner of record
of the property.  It mentioned AWells
Fargo@ only as
having been the servicer of the loan obtained by Young.  And the evidence shows that WFHMBPrudential
has an interest in the property, not because of a deed of trust granting WFHMBPrudential
an interest that was then registered with MERS, but rather through a deed from
HUD conveying the property to Wells Fargo outright.  Thus, the fact that MERS may be a Abook
entry system@ does not establish that it has
a landlord-tenant relationship with Young with respect to the property.  The county court had no evidence before it
establishing that after HUD transferred the property to WFHMBPrudential,
that entity nominated MERS to act for it with respect to this property.  And at the hearing, MERS made no attempt to
explain the subsequent deeds to and from HUD and relied exclusively on the
substitute trustee=s deed to assert its right to
possession.








Young introduced evidence disputing both MERS=s
interest in the property and any landlord-tenant relationship between her and
MERS.  Based on the pleadings and
evidence before it, the county court would have had to determine who owned the
property in order to determine whether MERS had the superior right to
possession.[26]  Accordingly, because the county court had no
jurisdiction to determine title, and because title may not be adjudicated in a
forcible detainer action, the county court did not have jurisdiction to
determine if MERS had a superior right to immediate possession of the
property.  We overrule MERS=s second
issue.  Because we have held that the
county court did not have jurisdiction to determine MERS=s claim,
we do not address MERS=s remaining issue.[27]

Having held that the county court had no
jurisdiction to determine MERS=s right
to possession, we reverse the judgment of the county court and render judgment
dismissing this case.[28]

 

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT,
and MCCOY, JJ.

DELIVERED:  June 4, 2009











[1]See Tex. R. App. P. 47.4.





[2]Young did not specify
which Wells Fargo entity she contacted.





[3]See Tex. R. App. 47.1.





[4]Cattin v. Highpoint
Village Apartments, 26 S.W.3d 737, 738B39 (Tex. App.CFort Worth 2000, pet. dism=d w.o.j.).





[5]Tex. Prop. Code Ann. ' 24.002(a) (Vernon 2000).





[6]Gibson v. Dynegy
Midstream Servs., L.P., 138 S.W.3d 518, 522 (Tex. App.CFort Worth 2004, no pet.).





[7]Rice v. Pinney, 51 S.W.3d 705, 709, 712
(Tex. App.CDallas 2001, no pet.).





[8]See Salaymeh v. Plaza
Centro, LLC, 264 S.W.3d 431, 436 (Tex. App.CHouston [14th Dist.]
2008, no pet.) (stating that in forcible detainer action, landlord-tenant
relationship presents Aan independent basis on which
the trial court [can] determine the right to immediate possession without
resolving underlying title issues@); Brown v. Kula‑Amos, Inc., No. 02‑04‑00032‑CV,
2005 WL 675563, at *3  (Tex. App.CFort Worth 2005, no pet.)
(mem. op.) (noting that forcible detainer action based on contract for deed
depends upon landlord-tenant relationship and that contract for deed may
provide for party to become tenant at sufferance upon default).





[9]Tex. R. Civ. P. 745.





[10]See Cattin, 26 S.W.3d at 739; Tex.
R. Civ. P. 574b.





[11]Harter v. Curry, 101 Tex. 187, 105 S.W.
988, 989 (Tex. 1907); Villalon v. Bank One, 176 S.W.3d 66, 69B70 (Tex. App.CHouston [1st Dist.] 2004,
pet. denied).





[12]Gibson, 138 S.W.3d at 522;
Rice, 51 S.W.3d at 708B09.





[13]Rice, 51 S.W.3d at 713.





[14]See Scott v. Hewitt, 127 Tex. 31, 90 S.W.2d
816, 818 (1936).





[15]See Reynolds v. Wells
Fargo Bank, N.A., 245 S.W.3d 57, 60 (Tex. App.CEl Paso 2008, no pet.) (stating that argument
that notice of foreclosure was improper was beyond scope of forcible detainer
action because only issue in such action was right to possession).





[16]See Tex. Prop. Code Ann. ' 51.0001 (Vernon 2007)
(defining term Abook entry system@).





[17]MERSCORP, Inc. v. Romaine, 8 N.Y.3d 90, 861 N.E.2d
81, 83 (2006).





[18]Id.





[19]Id.





[20]Id.





[21]Id.





[22]Id. at n.4.





[23]In re Hawkins, No. BK‑S‑07‑13593‑LBR,
2009 WL 901766, at *3 (Bankr. D. Nev. Mar. 31, 2009) (mem. op.).





[24]Id. at *4.





[25]See Tex. Prop. Code Ann. ' 51.0001 (defining Abook entry system@ as Aa national book entry
system for registering a beneficial interest in a security instrument@) (emphasis added).





[26]See Dass, Inc. v. Smith, 206 S.W.3d 197, 200
(Tex. App.CDallas 2006, no pet.); Rice,
51 S.W.3d at 712B13.





[27]See Tex. R. App. P. 47.1.





[28]See City of Wichita Falls
v. Pearce,
33 S.W.3d 415, 417 (Tex. App.CFort Worth 2000, no pet.) (reversing trial court
judgment and rendering judgment of dismissal because trial court had no
jurisdiction over claims).