

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-088-CV

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, AS
NOMINEE FOR LENDER AND
LENDER'S SUCCESSORS AND
ASSIGNS

APPELLANT

V.

KIM YOUNG AND ALL
OCCUPANTS OF 289 CR 4764,
BOYD, TEXAS 76023

APPELLEES

------------

### FROM THE COUNTY COURT AT LAW OF WISE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Mortgage Electronic Registration Systems, as Nominee for

Lender and Lender's Successors and Assigns, ("MERS") appeals from the

---

[1]  *See* Tex. R. App. P. 47.4.

judgment of the county court at law of Wise County on its forcible detainer action against Appellees Kim Young and All Occupants of 289 CR 4764, Boyd, Texas 76023 ("Young").  MERS brings two issues on appeal.  In its first issue, MERS argues that the trial court erred by granting judgment for possession in favor of Young on the basis of estoppel because the defense of estoppel cannot control the outcome in a forcible detainer action.  In its second issue, MERS argues that the trial court erred by granting judgment for possession in favor of Young because the evidence showed that MERS owned the property and had a superior right of possession of the property.  Because we hold that the evidence does not demonstrate that MERS owned the property at the time of its forcible detainer action and that the county court did not have jurisdiction to determine the issue of possession because that determination rested on the resolution of title, we reverse the judgment of the county court and render a judgment of dismissal.

Young bought the property at issue in 2002.  She executed a note on the property, secured by a deed of trust.  Home Loan Corporation was listed on the deed of trust as the lender and MERS was named as nominee.  The deed of trust noted that MERS held legal title and had the right to foreclose and sell the property.  The deed of trust did not mention Wells Fargo Home Mortgage, Inc. ("WFHM"), and no record of assignment of the note was introduced at the

2

hearing on MERS's forcible detainer action, but Young alleged that she made her monthly mortgage payments to WFHM in 2002 and 2003.

According to Young's testimony at the hearing in the county court, sometime in 2004, she sold the property, and she obtained information from WFHM about how the buyers could assume the debt. She testified that she followed the instructions given and paid an assumption fee and that she never received any communication from WFHM that the assumption did not go through. But she did not testify that she ever received confirmation from WFHM that the assumption had gone through, and no deed conveying the property to the buyers was introduced at the hearing. Young's attorney had the sale contract with her at the hearing, but it was not introduced into evidence.

Young testified that in 2005, she received notice that Wells Fargo Bank, N.A. had procured insurance on the property in Young's name. She stated that she then contacted the insurance company and informed it of the sale of the property and the buyer's assumption of the note.

On January 3, 2006, unbeknownst to Young, a substitute trustee conveyed the property to MERS after a nonjudicial foreclosure sale. The deed was recorded in the Wise County records. On January 12, 2006, MERS conveyed the property to the Secretary of the Department of Housing and Urban Development ("HUD").

3

In April and June of 2006, Standard Guaranty Insurance Company sent letters to Young notifying her that it had paid Wells Fargo Bank, N.A. for claims made under an insurance policy on the property. On August 30, 2006, WFHM sent Young a notice that it was renewing the insurance on the property.

Young testified that when she received this letter (which was after the nonjudicial foreclosure sale and the transfer of the property to HUD), she contacted "Wells Fargo."[2] She testified that she was told that the property had been abandoned by the buyers; the note was in default; foreclosure proceedings had been commenced on January 3, 2006, but had not been finalized; and she was still the owner of the property. She testified that an employee of "Wells Fargo" agreed to reinstate the note and send her the paperwork for reinstatement, but that she never received the paperwork despite repeated telephone calls to "Wells Fargo" and "Wells Fargo" repeatedly telling her that the note could be reinstated. Despite never receiving the paperwork, she moved back onto the property and made repairs to it.

On May 10, 2007, HUD conveyed the property under a deed without warranty to Wells Fargo Home MTG–Prudential ("WFHM–Prudential"). On June 27, 2007, a law firm acting on behalf of Wells Fargo Bank, N.A. sent Young a

---

[2] Young did not specify which Wells Fargo entity she contacted.

4

notice to vacate the property. When she refused, MERS filed a forcible detainer action against her in the justice court. After the justice court granted possession of the property to MERS, Young appealed to the statutory county court. There she entered a plea to the jurisdiction and several affirmative defenses, including estoppel and a claim that the foreclosure had not complied with statutory requirements. At the conclusion of the hearing, the county court stated that estoppel applied and that it was denying the detainer on that ground. The court's judgment for Young, however, did not state the specific grounds for denying MERS's forcible detainer. MERS now appeals.

We consider MERS' second issue first because it is dispositive.[3] MERS argues that the trial court erred by granting judgment for possession in favor of Young because the evidence showed that MERS owned the property and had a superior right of possession of the property. Young argued in the county court and in the alternative on appeal that the county court did not have jurisdiction over the forcible detainer action because the court could not determine whether MERS had a superior right to immediate possession without determining title. We agree with Young.

---

[3] *See* Tex. R. App. 47.1.

A forcible detainer action addresses only the question of who is entitled to immediate possession of a premises.[4] A person commits forcible detainer when the person refuses to surrender possession of real property on demand and the person is a tenant by sufferance.[5] A plaintiff in a forcible detainer action must present sufficient evidence of ownership to demonstrate a superior right to immediate possession of the premises.[6] A plaintiff does not, however, have to prove ownership of the property; rather, a court may determine which party has a superior right to possession without determining title when there exists a landlord-tenant relationship between the parties.[7] A court does not have to determine title in such a case because the existence of the landlord-tenant relationship provides a basis for determining the right to possession without resolving the issue of who owns the property.[8]

---

[4] *Cattin v. Highpoint Village Apartments*, 26 S.W.3d 737, 738–39 (Tex. App.—Fort Worth 2000, pet. dism'd w.o.j.).

[5] Tex. Prop. Code Ann. § 24.002(a) (Vernon 2000).

[6] *Gibson v. Dynegy Midstream Servs., L.P.*, 138 S.W.3d 518, 522 (Tex. App.—Fort Worth 2004, no pet.).

[7] *Rice v. Pinney*, 51 S.W.3d 705, 709, 712 (Tex. App.—Dallas 2001, no pet.).

[8] *See Salaymeh v. Plaza Centro, LLC*, 264 S.W.3d 431, 436 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating that in forcible detainer action, landlord-tenant relationship presents "an independent basis on which the trial court [can] determine the right to immediate possession without resolving

In a forcible detainer case, the only issue that may be determined is the right to actual possession; the issue of title to the property cannot be adjudicated.[9] The losing party in a forcible detainer action brought in the justice court may appeal to the county court for a trial de novo.[10] The taking of such an appeal vacates the judgment of the justice court.[11] In an appeal from a justice court, the county court does not have jurisdiction if the justice court did not have jurisdiction, and justice courts do not have jurisdiction to decide issues of title.[12] Significantly, although the existence of a title dispute will not deprive a justice court of jurisdiction in a forcible detainer action, the court does not have jurisdiction when the right to possession cannot be determined without resolving the title issue.[13] Thus, the county court did not have jurisdiction in

---

underlying title issues"); *Brown v. Kula-Amos, Inc.*, No. 02-04-00032-CV, 2005 WL 675563, at *3 (Tex. App.—Fort Worth 2005, no pet.) (mem. op.) (noting that forcible detainer action based on contract for deed depends upon landlord-tenant relationship and that contract for deed may provide for party to become tenant at sufferance upon default).

[9] Tex. R. Civ. P. 745.

[10] *See Cattin*, 26 S.W.3d at 739; Tex. R. Civ. P. 574b.

[11] *Harter v. Curry*, 101 Tex. 187, 105 S.W. 988, 989 (Tex. 1907); *Villalon v. Bank One*, 176 S.W.3d 66, 69–70 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

[12] *Gibson*, 138 S.W.3d at 522; *Rice*, 51 S.W.3d at 708–09.

[13] *Rice*, 51 S.W.3d at 713.

this forcible detainer case if the court could not determine the right to possession without determining title.

MERS based its claim for the right to possession on an alleged landlord-tenant relationship created by a deed from the substitute trustee's sale and the provision in the deed of trust that made Young a tenant at sufferance upon default and foreclosure. MERS submitted to the trial court a copy of the deed of trust that secured the note to Young and listed MERS as the nominal mortgagee for the lender and its successors and assigns. The deed of trust provided that if Young defaulted on the note and the property was sold at a foreclosure sale under the deed of trust, Young would become a tenant at sufferance. This kind of provision in a deed of trust is generally sufficient to establish a landlord-tenant relationship between the mortgagor and the purchaser of the property at a foreclosure sale.[14] MERS also introduced evidence of the substitute trustee's deed showing that it purchased the property at a foreclosure sale. MERS argued in the county court that with this evidence — the substitute trustee's deed showing that MERS owned the property after purchasing it at the foreclosure sale and the deed of trust creating a landlord-tenant relationship between it and Young and showing that Young was

---

[14] *See Scott v. Hewitt*, 127 Tex. 31, 90 S.W.2d 816, 818 (1936).

8

a tenant at sufferance—the county court could have determined MERS's right to possession without determining title, despite Young's arguments with respect to the propriety of the foreclosure proceedings.[15]

But Young brought a plea to the jurisdiction, disputing MERS's assertion that it owned the property. At the hearing, Young introduced two deeds executed *after* the substitute trustee's deed:  a deed conveying the property from MERS to HUD and another deed conveying the property from HUD to WFHM–Prudential.  The deed from HUD does not mention MERS at all, as nominee for WFHM–Prudential or in any other capacity.  All the other documents MERS introduced relating to this property did, however, specifically mention MERS.  The deed of trust listed MERS, as nominee for the lender, as the beneficiary of the instrument.  The substitute trustee's deed listed MERS, as nominee for the lender, as the mortgagee.  The deed to HUD listed MERS, "as nominee for [the] Lender," as the grantor.  But no evidence before the county court indicated that WFHM–Prudential designated MERS to act as its nominee with respect to this property after HUD conveyed it to WFHM–Prudential.

---

[15] *See Reynolds v. Wells Fargo Bank, N.A.*, 245 S.W.3d 57, 60 (Tex. App.—El Paso 2008, no pet.) (stating that argument that notice of foreclosure was improper was beyond scope of forcible detainer action because only issue in such action was right to possession).

On appeal, MERS argues that it brought the forcible detainer action on behalf of "Wells Fargo." It argues that it is a "book entry system" as that term is defined in section 51.0001 of the property code[16] and contends that under the deed of trust, MERS could act on behalf of "Lender and Lender's successors and assigns" and that WFHM–Prudential, as the current owner of the property, is "Lender's successor or assign with regard to the [p]roperty." Thus, MERS argues, it had authority to bring this suit on behalf of WFHM–Prudential.

MERS did not introduce evidence in the county court about the nature of its business, but it has been discussed by other courts. MERS was created for the purpose of tracking ownership interests in residential mortgages.[17] Entities such as mortgage lenders "subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages."[18] These MERS members "contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system."[19] When a mortgage is executed through a MERS member and

---

[16] *See* Tex. Prop. Code Ann. § 51.0001 (Vernon 2007) (defining term "book entry system").

[17] *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 861 N.E.2d 81, 83 (2006).

[18] *Id.*

[19] *Id.*

registered in the MERS system, it is recorded in the real property records with MERS named on the instrument as nominee or mortgagee of record.[20] While the mortgage is in effect, the original lender may transfer the beneficial ownership or servicing rights on the mortgage to another MERS member, with MERS tracking these electronic transfers; these assignments are not recorded in the real property records.[21] If a MERS member assigns its interest in a mortgage to a non-MERS member, this assignment is recorded in the real property records and MERS deactivates the loan within its system.[22]

MERS has "no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans."[23] MERS acts as the agent only for its members; once a note is transferred out of the MERS system to a non-member, MERS cannot act as the agent.[24]

---

[20] *Id.*

[21] *Id.*

[22] *Id.* at n.4.

[23] *In re Hawkins*, No. BK-S-07-13593-LBR, 2009 WL 901766, at *3 (Bankr. D. Nev. Mar. 31, 2009) (mem. op.).

[24] *Id.* at *4.

11

The evidence in the county court showed that MERS was named as nominee for Home Loan Corporation, the original lender on the note. After Young defaulted on the note, MERS purchased the property at the substitute trustee's sale and subsequently conveyed the property to HUD. HUD later conveyed the property to WFHM–Prudential. The record did not establish that WFHM–Prudential was a member of MERS, that MERS was acting for WFHM–Prudential in bringing the forcible detainer action, or that WFHM–Prudential's ownership of the property was the type of interest that could be registered with MERS such that MERS could record the interest in its name in accordance with the property code or bring this action.[25]

According to the property records of Wise County, WFHM–Prudential holds title to the property. MERS does not. MERS did not assert in the county court that WFHM–Prudential owned the property under a deed from HUD or that it acted on behalf of WFHM–Prudential. It asserted instead that MERS itself owned the property under the substitute trustee's deed naming it as grantee "as nominee for Lender and Lender[']s Successors and Assigns." It stated that it was a nominee for "Lender" but did not specify who "Lender"

---

[25] *See* Tex. Prop. Code Ann. § 51.0001 (defining "book entry system" as "a national book entry system for registering *a beneficial interest in a security instrument*") (emphasis added).

12

was or show (or even assert) that it had any authority to bring a forcible detainer action on behalf of WFHM–Prudential, the owner of record of the property. It mentioned "Wells Fargo" only as having been the servicer of the loan obtained by Young. And the evidence shows that WFHM–Prudential has an interest in the property, not because of a deed of trust granting WFHM–Prudential an interest that was then registered with MERS, but rather through a deed from HUD conveying the property to Wells Fargo outright. Thus, the fact that MERS may be a "book entry system" does not establish that it has a landlord-tenant relationship with Young with respect to the property. The county court had no evidence before it establishing that after HUD transferred the property to WFHM–Prudential, that entity nominated MERS to act for it with respect to this property. And at the hearing, MERS made no attempt to explain the subsequent deeds to and from HUD and relied exclusively on the substitute trustee's deed to assert its right to possession.

Young introduced evidence disputing both MERS's interest in the property and any landlord-tenant relationship between her and MERS. Based on the pleadings and evidence before it, the county court would have had to determine who owned the property in order to determine whether MERS had the superior

right to possession.[26] Accordingly, because the county court had no jurisdiction to determine title, and because title may not be adjudicated in a forcible detainer action, the county court did not have jurisdiction to determine if MERS had a superior right to immediate possession of the property. We overrule MERS's second issue. Because we have held that the county court did not have jurisdiction to determine MERS's claim, we do not address MERS's remaining issue.[27]

Having held that the county court had no jurisdiction to determine MERS's right to possession, we reverse the judgment of the county court and render judgment dismissing this case.[28]

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED: June 4, 2009

---

[26] *See Dass, Inc. v. Smith*, 206 S.W.3d 197, 200 (Tex. App.—Dallas 2006, no pet.); *Rice*, 51 S.W.3d at 712–13.

[27] *See* Tex. R. App. P. 47.1.

[28] *See City of Wichita Falls v. Pearce*, 33 S.W.3d 415, 417 (Tex. App.—Fort Worth 2000, no pet.) (reversing trial court judgment and rendering judgment of dismissal because trial court had no jurisdiction over claims).

14