DECISION
Before this Court for decision are the Plaintiffs' requests for a declaratory judgment and injunctive relief.[1] The Plaintiffs ask this Court, inter alia, to cancel a scheduled foreclosure sale of their home. The Plaintiffs argue that Mortgage Electronic Registration Systems, Inc. ("MERS"), under the facts of this case, lacks standing to foreclose under the Rhode Island Statutory Power of Sale. Jurisdiction is pursuant to sections 8-2-13 and 9-30-1 of the General Laws of Rhode Island, 1956, as amended.
 Facts and Travel
The parties agree on the following facts. Anthony Bucci borrowed $249,900 from Lehman Brothers Bank, FSB ("Lehman") to purchase a home. In order to evidence the loan, Mr. Bucci executed an Adjustable Rate Note ("the Note") made payable to Lehman *Page 2 
in the principal amount of $249,900. (Pls.' Ex. 1A.) Contemporaneously therewith, Mr. Bucci and his wife, Stephanie Bucci (collectively, "Buccis" or "Plaintiffs"), in order to secure the loan, executed a mortgage ("Mortgage") covering the real estate Mr. Bucci was purchasing. (Pls.' Ex. 1B.)
The Mortgage defines "Borrower" as the Buccis, (Pls.' Ex. 1B at 1), and states "[t]he Borrower is the mortgagor under this Security Instrument." Id. The Mortgage also states: "`MERS' is Mortgage Electronic Registration Systems, Inc[.] MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns[.] MERS is the mortgagee under this Security Instrument[.]" Id. The Mortgage further provides: "`Lender' is Lehman Brothers Bank, FSB, a Federal Savings Bank[.]" Id. at 2.
The Mortgage provides:
 [The Buccis] do[] hereby mortgage, grant and convey to MERS, (solely as nominee for [Lehman] and [Lehman]'s successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property. . . .
 . . . .
 . . . [The Buccis] understand[] and agree[] that MERS holds only legal title to the interests granted by [the Buccis] in this [Mortgage], but, if necessary to comply with law or custom, MERS (as nominee for [Lehman] and [Lehman]'s successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of [Lehman][,] including, but not limited to, releasing and canceling this [Mortgage]. Id. at 3.
The Mortgage further provides: "Lender shall give notice to [the Buccis] prior to acceleration following [the Buccis]'s breach of any covenant or agreement in this *Page 3 
[Mortgage][.] . . . If default is not cured . . . Lender at its option . . . may invoke the STATUTORY POWER OF SALE. . . . If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to [the Buccis]. . . ."Id. ¶ 22, at 13.
Cheryl R. Marchant, a Vice President of Aurora Loan Services, LLC ("Aurora"), stated by affidavit that the Note and the Mortgage are serviced by Aurora. (Defs.' Ex. B ¶ 4.) Further, she stated that "[t]he Note has been indorsed in blank and is currently held by LaSalle[2] as [] custodian for the beneficial owner of the Note and/or its agents (including MERS) for whom MERS, in its capacity as mortgagee, is the nominee of the beneficial owner of the Note."Id. ¶ 5.
Mr. Bucci defaulted on the Note. Id. ¶ 6. On November 20, 2008, Aurora sent Mr. Bucci a letter explaining,inter alia, that his loan was in default, and that Aurora "may start legal action to foreclose on the Mortgage. . . ."Id. ¶ 7. To date, Mr. Bucci has not cured the default, and, in fact, has failed to make any payments on the Note since September 2008. Id. ¶ 8. Ms. Marchant states by affidavit that "[a]s a result thereof, as the mortgagee under the Mortgage and as nominee for the beneficial owner of the Note, MERS initiated foreclosure proceedings by sending out notices of foreclosure dated March 4, 2009 for a foreclosure sale to be held at the Property on April 28, 2009." After a brief delay due to a voluntary cancelation of the sale, MERS re-commenced foreclosure under the Statutory Power of Sale.[3] On May 14, 2009, the Buccis each received a notice of the foreclosure sale which had been scheduled for July 10, 2009. *Page 4 
One day before the scheduled foreclosure sale, the Buccis, through counsel, filed a Verified Complaint commencing this action and seeking declaratory and injunctive relief. The Buccis ask this Court to declare that: (a) Lehman was/is the Lender relative to this matter; (b) MERS is not a Lender relative to this matter; (c) pursuant to the instant loan documents, only the Lender can invoke the Statutory Power of Sale contained in the Mortgage; (d) the pending foreclosure violates the terms and conditions of the loan documents and Rhode Island statutory law; (e) the pending foreclosure be ordered cancelled; (f) the Buccis do not have power to designate Lender as mortgagee; (g) there is no proof of agency between MERS and Lehman and/or Aurora; (h) that Aurora, as servicer, is not allowed by statute, to foreclose on a mortgage that it does not own. The Buccis further seek injunctive relief to preclude MERS from exercising the power of sale contained in the Mortgage.
On July 9, 2009, this Court ordered that the foreclosure of the subject property be stayed until further order of the Court. A hearing was held on July 14, 2009 on whether MERS under the facts described can foreclose a real estate mortgage in Rhode Island by utilizing the power of sale. By agreement of the parties, and because this Court finds that there are only questions of law at issue, the Court will decide the entire matter at this time and issue a final judgment. *Page 5 
 Standard of Review
It is well settled that this Court's decision to grant or deny declaratory relief is discretionary under the Uniform Declaratory Judgments Act (G.L. 1956 chapter 30 of title 9). Town ofBarrington v. Williams, 972 A.2d 603, 608 (R.I. 2009) (citingSullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997)). In order to grant a permanent injunction, this Court must determine that "the merits of the case call for an order forbidding or compelling particular conduct." 1 Kent Rules of CivilProcedure § 65:1 (2006). Similar to a declaratory judgment action, "[t]he issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier of fact." DeNucci v. Pezza,114 R.I. 123, 130, 329 A.2d 807, 811 (R.I. 1974).
 Discussion A. MERS
Several courts across the country have described MERS's role in the lending industry. See, e.g., MERSCORP,Inc. v. Romaine, 861 N.E.2d 81, 83 (N.Y. 2006); Jackson v.Mortgage Elec. Registration Sys., Inc., Civ. No. 08-305 (JNE/JJG), 2008 WL 413293, at *2 (D. Minn. Feb. 13, 2008); In re Huggins,357 B.R. 180, 183 (Bankr. D. Mass. 2006); Mortgage Elec.Registration Sys., Inc. v. Nebraska Dep't of Banking,704 N.W.2d 784, 785-88 (Neb. 2005). "In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages."Romaine, 861 N.E.2d at 83 (footnote omitted). "Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of *Page 6 
mortgages." Id. (footnote omitted). MERS serves as mortgagee of record holding legal title to mortgages in a nominee capacity.See Huggins, 357 B.R. at 183. "MERS remains the mortgagee of record when beneficial ownership interests or servicing rights are sold from one member of the MERS System to another."Jackson, 2008 WL 413293, at *2. "When rights are transferred from a member of the MERS System to a non-member, MERS records an assignment from MERS to the non-member in the [municipality] where the secured property is located." Id.
 B. Contractual Authority for MERS To Foreclose
The Plaintiffs argue that the language of the Mortgage does not authorize MERS to foreclose by power of sale. Specifically, they contend that paragraph twenty-two of the Mortgage, which states that "Lender . . . may invoke the STATUTORY POWER OF SALE," permits only Lehman to invoke the Statutory Power of Sale. The Defendants argue that the language contained on page three of the Mortgage specifically grants MERS the Statutory Power of Sale.
In determining whether the Mortgage authorizes MERS to foreclose through use of the Statutory Power of Sale, the following rules of contract interpretation will govern. "If the court finds that the terms of an agreement are clear and unambiguous, the task of judicial construction is at an end and the agreement must be applied as written." McBurney v. Teixeira,875 A.2d 439, 443 (R.I. 2005). "[A]n agreement is ambiguous only when it is reasonably and clearly susceptible to more than one interpretation." Id. "In determining whether an agreement is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning."Id. This Court should eschew a hyper-technical interpretation of a contract term in favor of a *Page 7 
more common place construction. City of E. Providence v. UnitedSteel Workers of Am., Local 15509,925 A.2d 246, 252-53 (R.I. 2007).
Here, the Buccis through the Mortgage specifically granted "the Statutory Power of Sale" to MERS, as nominee for Lender and Lender's successors and assigns. (Pls.' Ex. 1B at 3.) The Mortgage further stated that "if necessary to comply with law or custom,MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to forecloseand sell the Property. . . ." Id. (Emphasis added). The fact that paragraph twenty-two of the Mortgage states that the Lender "may invoke the STATUTORY POWER OF SALE" (Id. at 13) does not negate the previous language in the Mortgage directly granting MERS, as mortgagee in a nominee capacity, the right to invoke the Statutory Power of Sale. MERS's right to exercise the Statutory Power of Sale does not depend upon paragraph twenty-two at all — rather, this right exists independently as a direct grant to MERS. As a matter of fact, it could be argued that if the Lender sought to foreclose it would be challenged as a stranger to the title.[4]
MERS has the right to invoke the Statutory Power of Sale here because it is the named mortgagee and nominee of Lehman and its "successors and assigns." The Marchant affidavit states that "[t]he Note has been indorsed in blank and is currently held by LaSalle as custodian for the beneficial owner of the Note. . . ." (Defs.' Ex. B ¶ 5.) Section 6A-3-205(b) of the Rhode Island General Laws provides, "[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." "`Bearer' means a person in possession of a *Page 8 
negotiable instrument . . . that is payable to bearer or indorsed in blank." Section 6A-1-201(b)(5). LaSalle Bank NA is in possession of the Note as custodian in a trustee capacity for the beneficial owner of the Note. (See Draft Trial Tr. 37:25-38:9.) The current beneficial owner of the Note is a "successor or assign" of Lehman. Therefore, MERS is the mortgagee as the nominee for the current beneficial owner of the Note.
The Court finds the reasoning of In re Huggins,357 B.R. 180 (Bankr. D. Mass. 2006), particularly apposite here. InHuggins, MERS sought relief from stay in order to foreclose by power of sale. Id. at 181-82. The court held that MERS had standing to seek relief from stay because:
 [1] MERS is acting as nominee for Spectrum, which holds the Note, and therefore there is no disconnection between the note and mortgage [;] [2] MERS is the record mortgagee under the Mortgage with the powers expressly therein set forth, including the power of sale under Section 14 [;] [3] Section 14[5] expressly authorizes the exercise of sale powers by a mortgagee or person authorized to sell, precisely the position occupied by MERS [;] [and] [4] the logic of a denial of MERS's foreclosure right as mortgagee would lead to anomalous and perhaps inequitable results, to wit, if MERS cannot foreclose though named as mortgagee, then either Spectrum can foreclose though not named as mortgagee or no one can foreclose, outcomes not reasonably or demonstrably intended by the parties. Id. at 184.
For the same reasons expressed in Huggins, this Court finds that MERS may foreclose by the power of sale. *Page 9 
Other jurisdictions have held that MERS may foreclose as mortgagee and nominee for the beneficial owner of the note. See,e.g., Mortgage Elec. Registration Sys., Inc. v. Azize,965 So. 2d 151, 153-54 (Fla. Dist. Ct. App. 2007) (finding that party seeking to foreclose need not be beneficial owner of the note); Mortgage Elec. Registration Sys., Inc. v. Revoredo,955 So. 2d 33, 34 (Fla. Dist. Ct. App. 2007) (finding that clear majority of cases support MERS's standing to maintain mortgage foreclosure proceedings[6]); Mortgage Elec. Registration Sys.,Inc. v. Ventura, No. CV054003168S,2006 WL 1230265, at *1 (Conn. Super. Ct. Apr. 20, 2006) (finding that "there is no question that [MERS] is the correct party to bring this [foreclosure] action"); In re Sina, No. A06-200, 2006 WL 2729544, at *2 (Minn. Ct. App. Sept. 26, 2006) (finding that "by agreement, MERS retained the power to foreclose the mortgage in its name"); Hilmon v. Mortgage Elec. RegistrationSys., Inc., No. 06-13055, 2007 WL 1218718, at *1-3 (E.D. Mich. Apr. 23, 2007) (finding that MERS does not need to hold the note to foreclose and that borrower expressly gave MERS right to foreclose as nominee). But see In re Vargas,396 B.R. 511, 515-17 (Bankr. C.D. Cal.) (Bufford, J.) (finding that without knowing the identity of the beneficial owner of the note, and without an agency agreement between a named beneficial note-owner and MERS, MERS lacked standing to obtain stay relief);Landmark Nat'l Bank v. Kesler,192 P.3d 177, 179-80 (Kan. Ct. App. 2008) (finding that MERS was not the true mortgagee but rather an agent of the true mortgagee because mortgage stated MERS was "solely" nominee). *Page 10 
Additionally, the Buccis argue that there is no evidence that Lehman designated MERS as its nominee. Although the Mortgage states that MERS is Lehman's nominee, the Buccis argue that because Lehman never signed the Mortgage, Lehman never designated MERS as its nominee. The Court finds that MERS was properly designated as Lehman's nominee because, in consideration for Mr. Bucci receiving $249,900, the Buccis granted a mortgage to MERS. If Lehman had not approved of MERS acting as its nominee, Lehman would not have disbursed the loan proceeds to the Buccis.
 C. Statutory Authority for MERS To Foreclose
The Plaintiffs argue that Rhode Island statutory law implicitly prohibits MERS from invoking the Statutory Power of Sale. The Defendants contend that Rhode Island statutory law does not prohibit a mortgagee in a nominee capacity from invoking the Statutory Power of Sale.
When reviewing a statute, the Court must "give effect to the purpose of the act as intended by the Legislature." Labor ReadyNe., Inc. v. McConaghy, 849 A.2d 340, 344 (R.I. 2004). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Accent Store Design, Inc. v. Marathon House,Inc., 674 A.2d 1223, 1226 (R.I. 1996). However, the Court should "not allow [itself] to be blindly enslaved to the literal reading of statutes when to do so would defeat or frustrate the evident intendment of the legislature." Town of Scituate v.O'Rourke, 103 R.I. 499, 507, 239 A.2d 176, 181 (1968).
The Plaintiffs concede that no Rhode Island statute explicitly prohibits MERS, as mortgagee in a nominee capacity, from foreclosing on a residential real estate mortgage *Page 11 
under a Statutory Power of Sale. (Draft Trial Tr. 16:6-17:15.) Notwithstanding, the Plaintiffs argue that certain Rhode Island statutes implicitly prohibit MERS from foreclosing as a mortgagee in a nominee capacity.[7]
The first statutory provision upon which the Plaintiffs rely is § 34-11-22, which describes the Statutory Power of Sale in a mortgage. The Plaintiffs argue that this section allows only "the mortgagee or his, her or its executors, administrators, successors or assigns" to exercise the power. They argue that because MERS is not a mortgagee, but rather a "nominee-mortgagee," MERS cannot invoke the Statutory Power of Sale. The Defendants contend that § 34-11-22 allows a mortgagee to invoke the Statutory Power of Sale, and that MERS is a mortgagee. Here, the Court finds that MERS is the mortgagee because the Mortgage executed by the Buccis so states. (Pls.' Ex. 1B at 1.) No other entity is named in the Mortgage as being a mortgagee. The fact that MERS acts in a nominee capacity for the lender and the lender's successors and assigns does not diminish MERS's role as the mortgagee nor is there created a new legal term "nominee-mortgagee." Nothing in the Rhode Island statutes prohibits MERS, as mortgagee in a nominee capacity, from foreclosing under the Statutory Power of Sale.
The Plaintiffs further argue that the language of § 34-11-21, the Statutory Mortgage Condition, demonstrates that the General Assembly intended that the mortgagee and lender would always be one and the same. Section 34-11-21 states that "the mortgagor . . . shall pay to the mortgagee or his or her heirs, executors, administrators, or assigns the principal and interest. . . ." (Emphasis added). The Plaintiffs argue that because the Buccis do not pay principal and interest to MERS, MERS cannot be a mortgagee. The Defendants argue that Plaintiffs' narrow *Page 12 
interpretation of this section would undermine the role of servicers in the mortgage lending industry. This Court finds that § 34-11-21 does not prohibit MERS from invoking the Statutory Power of Sale. Statutes should not be construed to reach an absurd result. See Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987). If this Court were to construe § 34-11-21 as the Plaintiffs suggest, it would be an absurd result because named mortgagees and lenders would be precluded from employing servicers to service and collect obligations secured by real estate mortgages. Clearly, the General Assembly envisioned a role for mortgage servicers in the mortgage lending industry. See, e.g., G.L. 1956 § 34-26-8(a)(4), as amended by P.L. 1995, ch. 95-131, § 1 (including mortgage servicer within the definition of "mortgagee" for purposes of § 34-26-8). Accordingly, this Court finds that MERS, while not the lender, may invoke the Statutory Power of Sale as the mortgagee.
 Conclusion
For the foregoing reasons, this Court denies the Plaintiffs' requests for declaratory and injunctive relief, and specifically holds that MERS, in the case at bar, has standing to and may foreclose the mortgage granted to it by the Plaintiffs by utilizing the Statutory Power of Sale referenced therein.
Counsel for the prevailing party shall submit an order and judgment to be settled upon notice.
[1] Originally, this matter was set down for hearing on a preliminary injunction. Pursuant to Rule 65(a)(2) of the Rhode Island Superior Court Rules of Civil Procedure, this Court consolidated the preliminary injunction hearing with the trial on the merits. See Pucino v. Uttley,785 A.2d 183, 188 n. 1 (R.I. 2001) (per curiam).
[2] "LaSalle" is LaSalle Bank, NA. (Draft Trial Tr. 102:2, July 14, 15, 2009.)
[3] G.L. 1956 § 34-11-22 provides: "The following power shall be known as the `statutory power of sale' and may be incorporated in any mortgage by reference: (Power) But if default shall be made in the performance or observance of any of the foregoing or other conditions, or if breach shall be made of the covenant for insurance contained in this deed, then it shall be lawful for the mortgagee or his, her or its executors, administrators, successors or assigns to sell, together or in parcels, all and singular the premises hereby granted or intended to be granted, or any part or parts thereof, and the benefit and equity of redemption of the mortgagor and his, her or its heirs, executors, administrators, successors and assigns therein, at public auction upon the premises, or at such other place, if any, as may be designated for that purpose in this deed, or in the published notice of sale first by mailing written notice of the time and place of sale by certified mail, return receipt requested, to the mortgagor, at his or her or its last known address, . . . at least thirty (30) days for individual consumer mortgagors, prior to first publishing the notice, including the day of the mailing in the computation; second, by publishing the same at least once each week for three (3) successive weeks in a public newspaper published daily in the city in which the mortgaged premises are situated. . . ."
[4] The only entity named as the mortgagee in the Mortgage is MERS. "MERS is the mortgagee under this Security Instrument." (Pls.' Ex. 1B at 1.) Accordingly, the Lender would not be listed in the Grantor/Grantee Index with respect to this conveyance.
[5] Mass. Gen. Laws ch. 244, § 14 addresses foreclosure under the power of sale. While there are differences between the power of sale statutes in Rhode Island and Massachusetts, such differences are not critical here. The Court in Huggins held that MERS could foreclose under the power of sale because it found that MERS was the mortgagee. "Thus, MERS as the mortgagee named in a recorded mortgage (albeit in a nominee capacity) is authorized to conduct a foreclosure by power of sale under Section 14."Huggins, 357 B.R. at 183. Both power of sale statutes allow for the mortgagee to exercise the power of sale.
[6] The Revoredo court explained why some courts have held that MERS lacks standing to foreclose: "the problem arises from the difficulty of attempting to shoehorn a modern innovative instrument of commerce into nomenclature and legal categories which stem essentially from the medieval English land law." Mortgage Elec.Registration Sys., Inc. v. Revoredo,955 So. 2d 33, 34 (Fla. Dist. Ct. App. 2007) (citing MERSCORP,Inc. v. Romaine, 861 N.E.2d 81 (N.Y. 2006) (Kaye, C.J., dissenting in part)).
[7] See Pls.' Mem. Supp. Mtn. Partial Summ. J. 1 n. 2, July 14, 2009.