**Teddy BARNETT and Carol Barnett, Plaintiffs,**

v.

**COUNTRYWIDE BANK, FSB; Federal National Mortgage Association as Trustee for Securitized Trustee Fannie Mae Remic Trust 2008–14; Fannie Mae; Bank of America, NA; Greentree Servicing; Mortgage Electronic Registration System aka "Mers" and Does 1 through 100 Inclusive, Defendants.**

No. 14–cv–4270 (ADS)(AKT).

United States District Court, E.D. New York.

Signed Nov. 20, 2014.

---

John Ogochukwu Emefieh, Esq., Brooklyn, NY, for Plaintiffs.

Bryan Cave LLP by Suzanne Michelle Berger, Esq., Scott Harris Kaiser, Esq., of Counsel, New York, NY, for Defendants Countrywide Bank, FSB and Bank of America, NA.

Parker Ibrahim & Berg LLC by Anthony Wayne Vaughn., Esq., John Michael Falzone, III, Esq., of Counsel, Somerset, NJ, for Defendants Federal National Mortgage Association as Trustee for Securitized Trustee Fannie Mae Remic Trust 2008–14; Fannie Mae; Greentree Services; Mortgage Electronic Registration System.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On April 1, 2014, the Plaintiff commenced this action in Supreme Court of the State of New York, County of Nassau, asserting, among other claims, violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., ("TILA"); the Home Ownership and Equity Protection Act, Regulation Z ("HOEPA"); and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA").

On July 11, 2014, the Defendants Countrywide Bank, f/k/a Countrywide Bank, FSB ("Countywide") removed this action to the Federal District Court of the Eastern District of New York on the basis of federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a).

On July 14, 2014, this action was assigned to this Court.

On July 18, 2014, the Defendants Federal National Mortgage Association as Trustee for Securitized Trust Fannie Mae REMIC Trust 2008–14, the Federal National Mortgage Association s/h/a Fannie Mae, Green Tree Servicing LLC s/h/a Green Tree Servicing, and Mortgage Electronic Registration Systems, Inc. s/h/a Mortgage Electronic Registration System ("MERS") filed a notice consenting to the removal of this action.

That same day, Countrywide moved, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(1) and 12(b)(6), to dismiss the complaint as against it for, respectively, lack of subject matter jurisdiction and failure to state a claim.

On July 29, 2014, the Defendants Federal National Mortgage Association as Trustee for Securitized Trust Fannie Mae REMIC Trust 2008–14, the Federal National Mortgage Association s/h/a Fannie Mae, Green Tree Servicing LLC s/h/a Green Tree Servicing, and MERS joined in Countrywide's motion to dismiss.

On September 8, 2014, after the expiration of the time for the Plaintiffs to respond to the motions to dismiss, the Court granted those motions as unopposed and closed the case.

On September 11, 2014, upon a letter request by the Plaintiffs, the Court vacated the orders dismissing this action as unopposed "in the interest of justice" and directed the Clerk of the Court to re-open the case and to reinstate the motions to dismiss. (Doc. No. 27.)

The Plaintiffs subsequently filed opposition papers to the pending motions to dismiss.

## I. BACKGROUND

Unless stated otherwise, the following facts are drawn from the complaint and construed in a light most favorable to the non-moving parties, the Plaintiffs.

On December 26, 2007, the Plaintiffs obtained a loan in the amount of $405,500 from Countywide secured by a mortgage on their residence located at 267 Moore Avenue in Freeport, New York.

The mortgage, which is attached to the complaint as Exhibit 2, indicates that MERS is the nominee for the lender and the lender's successors and assigns. (Mortgage, at 1.) Under the mortgage, the Plaintiffs agreed that MERS had the "the right . . . to exercise any or all" rights of the lender and "to take any action required" of the lender. (*Id.* at 2). The mortgage was also freely transferable and assignable. *See* (Compl., Ex. 4, ¶ 1)("I understand that the Lender may transfer this Note. The Lender or anyone whom takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.' "); (Mortgage, at ¶ 20.)("The Note, or an interest in the Note, together with this Security Instrument, can be sold one or more times. I might not receive any prior notice of these sales.").

At some point, the mortgage was assigned to a securitized trust known was Guaranteed REMIC Pass–Through Certificates Fannie Mae REMIC Trust 2008–14. The trustee of that trust is the Defendant Federal National Mortgage Association ("Fannie Mae").

According to the Plaintiffs, the assignment of the mortgage to the securitized trust violated the terms of the Pooling and Servicing Agreement (the "PSA") governing the trust. However, the Plaintiffs do not allege that they are either signatories or third-party beneficiaries to the PSA, intended or otherwise.

Countrywide subsequently merged into Bank of American, N.A, another named defendant.

On December 1, 2011, servicing of the loan transferred from Countrywide to the Defendant Greentree Servicing LLC.

As stated above, on April 1, 2014, this action ensued. As best as can be gleaned from the complaint, the Plaintiffs mount a challenge to the securitization process and the assignment of their mortgage to the securitized trust; assert claims for fraudulent inducement and concealment; for breach of fiduciary duty; for intentional infliction of emotional distress; and for violations of TILA, HOEPA, and RESPA. The Plaintiffs seek damages, declaratory relief, and rescission of the underlying loan and mortgage.

Presently pending before the Court are the motions by the Defendants to dismiss the complaint for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted.

## II. DISCUSSION

As an initial matter, the Court notes that the complaint appears to be a form complaint nearly identical to the complaint in at least three other cases that were dismissed as a matter of law. *Simmons v. Bank of Am., N.A.,* No. CIV. 13–0733(PJM), 2014 WL 509386, at *2 (D.Md. Feb. 6, 2014) (dismissing substantially identical complaint that "appear[ed] to be a form complaint, an amalgam of vague statements and legal conclusions, even naming what she believes are malefactor entities, none of which are sued in this action."); *Somarriba v. Greenpoint Mortgage Funding, Inc.,* 13–CV–072 (RWT), 2013 WL 5308286, at *3 (D.Md. Sept. 19, 2013) (dismissing substantially identical complaint and noting that "[e]ven a high-powered magnifying glass equipped with the finest convex lens would not allow the Court to identify specific factual allegations sufficient to save the Plaintiffs' Complaint from dismissal."); *see also Zbitnoff*

v. *NationStar Mortg. LLC*, No. C 13–05221(WHA), 2014 WL 2119875, at *4 (N.D.Cal. May 21, 2014).

■ The Court further notes that, in their opposition to the motion to dismiss, the Plaintiffs fail to address the Defendants' arguments in support of those parts of their motions to dismiss the claims for fraud in the inducement; fraudulent concealment; intentional infliction of emotional distress; violations of TILA, HOEPA, and RESPA; and rescission. "[A]rguments not made in opposition to a motion for summary judgment are deemed abandoned." *Plahutnik v. Daikin Am., Inc.*, 912 F.Supp.2d 96, 104 (S.D.N.Y.2012); *see Jain v. McGraw–Hill Cos., Inc.*, 827 F.Supp.2d 272, 280 (S.D.N.Y.2011) (holding that the plaintiff abandoned six claims when her opposition papers failed to respond to defendants' arguments on those claims); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F.Supp.2d 454, 468 (S.D.N.Y.2011) ("Plaintiff did not address this argument in his opposition papers, which operates as an abandonment of the argument."). Thus, these claims are dismissed as abandoned. Nonetheless, as explained below, these claims fail as a matter of law for additional reasons.

The several causes of action set forth in the instant complaint are addressed below.

## A. *The Rule 12(b)(1) Standard*

"A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is the appropriate mechanism for challenging a plaintiff's constitutional standing to bring a particular claim." *Ali v. New York City Dep't of Transp.*, No. 14–CV–312 (SLT)(CLP), 2014 WL 5822625, at *1 (E.D.N.Y. Nov. 7, 2014) (citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 104 (2d Cir.2008)). "The party invoking federal jurisdiction bears the burden of establishing" the court's jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

## B. *The Plaintiffs' Challenges to Securitization of the Mortgage*

In the Plaintiffs' first cause of action, they contend that the Defendants "do not have the right to foreclose or collect monthly mortgage payments on the Property because Defendants . . . have failed to perfect any security interest in the Property [and] [t]hus, the purported power to foreclose judicially . . . no longer applies." (Compl., at ¶ 58.) The Plaintiffs submit that the only parties with standing to collect payments and foreclose are the holders on the note, who they contend are the "certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains." (*Id.* at ¶ 59.) Relatedly, in the Plaintiffs' sixth cause of action, they seek to "quiet title," asserting that none of the Defendants have any rights under the loan and mortgage. (*Id.* at ¶ 142.) In the Plaintiffs' seventh cause of action, they seek a declaration that the Defendants lack the authority to collect monthly mortgage payments from them and to foreclose upon and sell the subject promises.

According the complaint a liberal construction, the Court construes these causes' of action to collectively constitute a general challenge to the mortgage securitization process. However, courts in other jurisdictions have overwhelmingly rejected such state law claims. *See e.g.*, *Zbitnoff*, 2014 WL 2119875, at *4 (The "Plaintiff's claim is defective because it is anchored to a faulty attack on the mortgage securitization process. Plaintiff's central underlying theory has been rejected by courts in this district as well as the undersigned. Neither our court of appeals nor the California Supreme Court has ruled on whether

plaintiff may challenge the mortgage securitization process, but the undersigned has held, in agreement with persuasive authority from this district, that there is no standing to challenge foreclosure based on a loan's having been securitized.")(citing *Tall v. MERS*, No. 12–05348(WHA), 2012 WL 6680183, 2012 U.S. Dist. LEXIS 181294 (N.D.Cal. Dec. 21, 2012)); *see also Rodenhurst v. Bank of Am.*, 773 F.Supp.2d 886, 898–99 (D.Haw.2011) ("The Court also rejects Plaintiffs' contention that securitization in general somehow gives rise to a cause of action—Plaintiffs point to no law or provision in the mortgage preventing this practice, and cite to no law indicating that securitization can be the basis of a cause of action. Indeed, courts have uniformly rejected the argument that securitization of a mortgage loan provides the mortgagor a cause of action."); *Joyner v. Bank of Am. Home Loans*, No. 2:09–CV–2406(RCJ)(RJJ), 2010 WL 2953969, at *2 (D.Nev. July 26, 2010) (rejecting breach of contract claim based on securitization of loan); *Haskins v. Moynihan*, No. CV–10–1000 (PHX)(GMS), 2010 WL 2691562, at *2 (D.Ariz. July 6, 2010) (rejecting claims based on securitization because the plaintiffs could point to no law indicating that securitization of a mortgage is unlawful, and the "[p]laintiffs fail[ed] to set forth facts suggesting that Defendants ever indicated that they would not bundle or sell the note in conjunction with the sale of mortgage-backed securities"); *Lariviere v. Bank of N.Y. as Tr.*, Civ. No. 9–515–P–S (MJK), 2010 WL 2399583, at *4 (D.Me. May 7, 2010) ("Many people in this country are dissatisfied and upset by [the securitization] process, but it does not mean that the [plaintiffs] have stated legally cognizable claims against these defendants in their amended complaint."); *Upperman v. Deutsche Bank Nat'l Trust Co.*, No. 01:10–cv–149 (CMH), 2010 WL 1610414, at *3 (E.D.Va. Apr. 16, 2010) (rejecting claims

because they are based on an "erroneous legal theory that the securitization of a mortgage loan renders a note and corresponding security interest unenforceable and unsecured"); *Silvas v. GMAC Mortg., LLC*, No. CV–09–265 (PHX)(GMS), 2009 WL 4573234, at *5 (D.Ariz. Dec. 1, 2009) (rejecting a claim that a lending institution breached a loan agreement by securitizing and cross-collateralizing a borrower's loan).

Indeed, in *Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 84 (2d Cir. 2014), the Second Circuit recently had occasion to express its stamp of disapproval, as a matter of constitutional and prudential standing, on such claims.

In that case, as in this matter, the plaintiff-mortgagors brought suit seeking a declaration that the defendants had no right to collect payments from the plaintiffs or to commence foreclosure proceedings where the plaintiffs had failed to pay on loans and mortgages, because the defendants had failed to comply with certain provisions of the assignment agreements. In affirming the lower court's holding, the Second Circuit found that "the district court properly ruled that [the] plaintiffs lacked standing to enforce the [PSA] agreements to which they were not parties and of which they were not intended beneficiaries." *Id.* at 87.

Based on the Second Circuit's decision in *Rajamin*, not addressed by the Plaintiffs, the Court finds that the Plaintiffs lack the requisite standing, both constitutional and prudential, to challenge the securitization process, to "quiet title," or to enforce the PSA.

■ First, they lack constitutional standing because they fail to allege a sufficient injury in fact. The Plaintiffs "acknowledge that they took out [the original loan] and were obligated to repay [it],"

*Rajamin*, 757 F.3d at 85, and the subsequent assignment did not affect the Plaintiffs' underlying debt or otherwise alter the terms of their loan. *See Boco v. Argent Mortgage Co., LLC*, No. 13–CV–1165 (DLI)(CLP), 2014 WL 1312101, at *3 (E.D.N.Y. Mar. 31, 2014); *Tamir v. Bank of New York Mellon*, No. 12–CV–4780 (DLI)(JO), 2013 WL 4522926, at *3 (E.D.N.Y. Aug. 27, 2013). Indeed, the assignment of the mortgage to the securitized trust did not create a new encumbrance on the subject property.

The Plaintiffs also do not allege that they paid the Defendants more than the amounts due; that the Defendants (or any other lenders or loan servicers) dispute who owns the loan; or that any entity other than the Defendants has attempted to recover on the loan. *Rajamin*, 757 F.3d at 85; *Boco*, 2014 WL 1312101, at *3; *Tamir*, 2013 WL 4522926, at *3. In fact, the Plaintiffs' "impl[ication] that the loans are owned by some other entity or entities[ ] is highly implausible, for that would mean that [for the last few years,] there was no billing or other collection effort by the loan's true owner." *Rajamin*, 757 F.3d at 85; *see also Tamir*, 2013 WL 4522926, at *3 (dismissing the mortgagor's quiet title claim for failure to plead concrete and particularized injury); *see also Zutel v. Wells Fargo Bank, N.A.*, No. 12–CV–3656 (RRM)(VMS), 2014 WL 4700022, at *4 (E.D.N.Y. Sept. 22, 2014) (relying on *Rajamin* ).

■ Second, the Plaintiffs fail to satisfy the prudential elements of standing. "The 'prudential standing rule ... normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *Rajamin*, 757 F.3d at 86 (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The "Plaintiffs lack prudential standing here because they are not parties to, nor third[-]party beneficiaries of, the Assignment or the PSA." *Zutel*, 2014 WL 4700022, at *5; *Rajamin*, 757 F.3d at 86 (affirming dismissal for lack of prudential standing); *Boco*, 2014 WL 1312101, at *3 (dismissing for lack of standing because the plaintiff was not party to, or third-party beneficiary of, assignment and the PSA); *Tamir*, 2013 WL 4522926, at *3 ("Plaintiff is not a party to the mortgage assignment, nor is there language in the governing loan documents or other allegations suggesting that Plaintiff is a third-party beneficiary of that agreement."), *appeal withdrawn* (Jan. 13, 2014); *Pollak v. Bank of Am.*, No. 12 CV 7726(VB), 2013 WL 4799264, at *3 (S.D.N.Y. Aug. 27, 2013) ("the question of who owns plaintiff's Mortgage is irrelevant for purposes of this case, as plaintiff admits he obtained two loans from Countrywide to purchase the Property. Common sense dictates that the mere fact there may be a dispute as to which entity has legal ownership of the Mortgage does not obviate plaintiff's contractual obligation to repay the loans."), *appeal withdrawn* (Mar. 14, 2014); *Karamath v. U.S. Bank, N.A.*, No. 11–CV–1557 (NGG)(RML), 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012) ("[P]laintiff is not a party to the PSA or to the Assignment of Mortgage, and is not a third-party beneficiary of either, and therefore has no standing to challenge the validity of that agreement or the assignment."), *rep. and recommendation adopted*, 2012 WL 4327502 (E.D.N.Y. Sept. 20, 2012).

In an effort to circumvent their lack of standing, the Plaintiffs argue that assignments failing to comply with the PSAs violated New York laws governing trusts. In so arguing, the Plaintiffs presumably rely on N.Y. Estates, Powers and Trusts Law ("EPTL") § 7–2.4 (McKinney 2002), which provides: "If the trust is expressed

in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by . . . law, is void."

■ However, "acts that violate a PSA are not automatically void under New York law." *Zutel*, 2014 WL 4700022, at *5 n. 10; *Rajamin*, 757 F.3d at 90 (observing that "under New York law such acts are voidable only at the instance of a trust beneficiary or a person acting in his behalf"). Further, even if it were true, the Plaintiffs still lack standing to make that argument. *See id.* at 88.

### C. *The Rule 12(b)(6) Standard*

To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Finn v. Anderson*, 592 Fed.Appx. 16, 18, No. 13–4020, 2014 WL 5904891, at *1 (2d Cir. Nov. 14, 2014) (citing *Twombly* and *Iqbal*).

The Court notes that, in their memorandum of law in opposition to the motions to dismiss, the Plaintiffs rely on the outdated legal standard under *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) governing motions to dismiss pursuant to Rule 12(b)(6). Under *Conley*, a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45–46, 78 S.Ct. 99. However, through *Twombly* and *Iqbal*, the Supreme Court of the United States " 'retired the *Conley* no-set-of-facts test' " in

"place of a new standard for addressing the sufficiency of a complaint under Rule 8(a)." *McAllister v. Metro. Transit Auth.*, No. 13–CV2060 (JG), 2013 WL 4519795, at *3 (E.D.N.Y. Aug. 26, 2013)(internal citation omitted).

### D. *As to the Claim Regarding MERS*

■ The Plaintiffs contend that MERS lacked authority as a nominee to assign the mortgage. (Compl., at ¶ 70.) This assertion flies in the face of the plain terms of the mortgage under which MERS could "exercise any or all" rights of the lender and the Lender's successors and assigns.

A brief background regarding MERS is in order. "In 1993, as mortgage securitization became widespread, mortgage-industry participants created MERS to facilitate quick, low-cost transfers of mortgage interests." *Caraballo v. Homecomings Fin.*, No. 12 CIV. 3127 JPO, 2014 WL 2117225, at *1 (S.D.N.Y. May 21, 2014). Under the public recording system, each transfer of a note triggered fees and the potential for "delays . . . by local recording offices, which were [subject to] . . . complex local regulations and database systems that had become voluminous and increasingly difficult to search." *Bank of New York v. Silverberg*, 86 A.D.3d 274, 926 N.Y.S.2d 532, 535 (2d Dep't 2011). MERS allowed member companies to avoid these fees and delays by "appoint[ing] MERS to act as their common agent on all mortgages they register in the MERS system." *Id.* (citing *Matter of MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 861 N.E.2d 81 (2006)). With MERS as the mortgagee of record, MERS members could exchange property interests without the need to publicly record the transfers. In short, "MERS is a private, contractual superstructure that is grafted onto the public landrecord[ing] system."

Adam J. Levitin, The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title, 63 Duke L.J. 637, 677 (2013).

Of relevance here is *Romaine*, wherein the New York Court of Appeals held that that the Suffolk County Clerk was compelled to record and index mortgages, assignments of mortgages, and discharges of mortgages that named MERS as the lender's nominee or mortgagee of record. Thus, in New York, assignments by MERS may be valid. *Bank of New York Mellon Trust Co. NA v. Sachar*, 95 A.D.3d 695, 696, 943 N.Y.S.2d 893 (1st Dep't 2012) ("Mortgage Electronic Registration System (MERS) validly assigned the mortgage to plaintiff").

The Plaintiffs rely on *LaSalle Bank Natl. Assn. v. Lamy*, 12 Misc.3d 1191[A], 2006 N.Y. Slip Op. 51534[U], 2006 WL 2251721 [Sup.Ct. Suffolk County Aug. 7, 2006], an unpublished decision. In that case, the court held that MERS could not prosecute a foreclosure action in its own name because it was a nominee of the lender and that only "the owner of the note and mortgage at the time of the commencement of a foreclosure action may prosecute said action." 2006 WL 2251721, at *1. However, the Court finds *Lamy* inapplicable as this is not a foreclosure action and MERS is not prosecuting an action to enforce a loan.

In any event, "[t]hat decision was rendered one year prior to the decision in [*Mortgage Elec. Registration Sys., Inc. v. Coakley*, 41 A.D.3d 674, 838 N.Y.S.2d 622 (2d Dept.2007) ] which held the exact opposite." *Deutsche Bank Nat. Trust Co. v. Pietranico*, 33 Misc.3d 528, 549, 928 N.Y.S.2d 818, 833 (Sup.Ct.2011) *aff'd*, 102 A.D.3d 724, 957 N.Y.S.2d 868 (2d Dep't 2013); *see U.S. Bank, N.A. v. Flynn*, 27 Misc.3d 802, 806, 897 N.Y.S.2d 855, 859 (Sup.Ct.2010) ("this court respectfully dis-

agrees with the conclusion reached by the court in *Lamy* on this issue and thus declines to adopt it."); *In re Huggins*, 357 B.R. 180, 184–85 (Bankr.D.Mass.2006) ("I am not persuaded that either the reasoning or holdings of *Lamy* [ ] warrant denial of MERS's mortgage rights and of its standing to assert them in a stay relief motion.").

In the Court's view, the cases cited by the Plaintiffs do not negate the fact that they contractually agreed that MERS would be the nominee of the lender and would be authorized to perform the rights of the lender, including to assign the mortgage. Moreover, even if the assignment of the mortgage was invalid, "the validity of the mortgage itself is not thereby vitiated." *Homar v. Am. Home Mortgage Acceptance, Inc.*, 119 A.D.3d 900, 989 N.Y.S.2d 856 (2d Dep't 2014). For the foregoing reasons, the Court finds that the assignment by MERS of the mortgage does not give rise to a cause of action.

### E. The Fraudulent Concealment and Fraudulent Inducement Claims

Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). If there are multiple defendants potentially implicated in the fraud, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987).

The elements of common law fraud under New York law are: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a

result of such reliance." *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank,* 57 F.3d 146, 153 (2d Cir.1995). "A fraudulent concealment claim shares these same elements with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information." *Woods v. Maytag Co.,* 807 F.Supp.2d 112, 119 (E.D.N.Y. 2011). Similarly, under New York law, an action for fraudulent inducement requires the demonstration of: "(1) a material misrepresentation or omission that induced the party to sign the contract; (2) *scienter;* (3) reliance; and (4) injury." *Davidowitz v. Patridge,* No. 08 CV 6962(NRB), 2010 WL 5186803, at *7 (S.D.N.Y. Dec. 7, 2010) (italics added).

■ As an initial matter, the Court finds that the Plaintiffs' fraudulent inducement claims are time-barred, at least as to Countrywide. "[Such a] claim is subject to a six-year statute of limitations." *Twersky v. Yeshiva Univ.,* 993 F.Supp.2d 429, 449 (S.D.N.Y.2014) (citing N.Y. C.P.L.R. § 213(8)), *aff'd,* 579 Fed.Appx. 7 (2d Cir. 2014).

Here, the Plaintiffs acquired the mortgage loan on December 26, 2007. (Compl., at ¶ 30.) As the Plaintiffs allege that they were fraudulently induced to obtain that loan, this claim necessarily arose on or before that date. Accordingly, the six-year statute of limitations expired on December 26, 2013. However, the Plaintiffs did not commence this action until April 23, 2014.

The Court recognizes that the New York state statute of limitations for fraud contains its own discovery rule: "an action based upon fraud … must be commenced [within] the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reason-

able diligence have discovered it." N.Y. C.P.L.R. § 213(8). However, given that the Plaintiffs make no argument based on this rule, the Court declines to address it.

■ In any case, as to each of the Defendants, the Plaintiffs fail to plead particularized facts, such as the time, place, and contents of any false representations or the identities of the wrongdoers, in support of their claims that the Defendants fraudulently concealed or induced them to enter into the loan and mortgage. *See Simmons,* 2014 WL 509386, at *4 (dismissing virtually identical fraudulent concealment and fraudulent inducement claims for failure to comply with Rule 9(b)); *Somarriba,* 2013 WL 5308286, at *4 (same).

Accordingly, the Court dismisses the Plaintiffs' claims for fraudulent concealment and fraudulent inducement.

## F.  *The Breach of Fiduciary Duty Claim*

■ Under New York law, the elements of a claim for breach of fiduciary duty are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.,* 660 F.3d 131, 138 (2d Cir.2011) (citations omitted). "A fiduciary relationship exists under New York law 'when one … is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Childers v. New York and Presbyterian Hosp.,* 36 F.Supp.3d 292, 306, Nos. 13 Civ. 5414(LGS), 13 Civ. 5899(LGS), 2014 WL 2815676, *9 (S.D.N.Y.2014) (citing *Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595, 599 (2d Cir.1991) (other citations omitted)).

■ As a preliminary matter, the Court finds that the Plaintiffs' claim for

breach of fiduciary duty, at least as to Countrywide, is time-barred.

A claim for breach of fiduciary duty generally accrues at the time of breach. *Malmsteen v. Berdon, LLP*, 369 Fed.Appx. 248, 249–50 (2d Cir.2010) (citing *Kaufman v. Cohen*, 307 A.D.2d 113, 760 N.Y.S.2d 157, 166 n. 3 (1st Dep't 2003)). Here, based on the complaint, the breach allegedly occurred at the time the mortgage loan was issued on December 26, 2007. "Under New York law, a breach of fiduciary duty claim has a six-year statute of limitations if the relief sought is equitable, and a three-year statute of limitations if only money damages are sought." *Speedfit LLC v. Woodway USA, Inc.*, 53 F.Supp.3d 561, 581, No. 13–CV–1276 (KAM)(AKT), 2014 WL 5093161, at *14 (E.D.N.Y. Oct. 10, 2014). "However, New York law permits certain actions for damages to property or pecuniary interest to be brought under a tort or contract theory, and hence applies the longer of the two statutes of limitations, as long as the asserted liability has its genesis in the contractual relationship of the parties." *Malmsteen*, 369 Fed.Appx. at 250 (citations and some internal punctuation omitted). "The statute of limitations for a breach of fiduciary duty claim sounding in tort is three years when money damages are sought, but the statute of limitations for a breach of fiduciary duty claim sounding in contract is six years." *Speedfit LLC*, 53 F.Supp.3d at 582, 2014 WL 5093161, at *14 (citing N.Y. C.P.L.R. § 213(2) and *Malmsteen*, 369 Fed.Appx. at 250).

In this case, the Plaintiffs seek compensatory and punitive damages in connection with their claim for breach of fiduciary duty. (Compl., at ¶ 127.) However, the Court need not decide whether the fiduciary duty alleged by the Plaintiffs arises from a contractual or tort relationship because the Plaintiffs' claim, at least as to Countrywide, is time-barred under either a three or six year statute of limitations.

In addition, as to each of the Defendants, the Plaintiffs claim for breach of fiduciary duty fails because they do not adequately plead the existence of a fiduciary duty. *See e.g., Hoover v. HSBC Mortgage Corp. (USA)*, 9 F.Supp.3d 223 (N.D.N.Y.2014) ("New York law provides that there is no fiduciary duty between creditors and debtors."); *Bank Leumi Trust Co. of N.Y. v. Block 3102 Corp.*, 180 A.D.2d 588, 589, 580 N.Y.S.2d 299, 301 (1st Dep't 1992) ("The legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or guarantors."), *lv. denied* 80 N.Y.2d 754, 587 N.Y.S.2d 906, 600 N.E.2d 633 (1992); *see also Zbitnoff*, 2014 WL 2119875, at *3 ("plaintiff has failed to put forward any evidence that would demonstrate a relationship other than a conventional borrower/lender relationship.").

Thus, the claim for breach of fiduciary duty is dismissed.

## G. *The Claim for Intentional Infliction of Emotional Distress*

"Under New York law, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F.Supp.3d 705, 729, No. 13 CIV. 5032(ER), 2014 WL 5089413, at *18 (S.D.N.Y. Sept. 30, 2014) (citing *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir.1996)). "In New York, a cause of action for intentional infliction of emotional distress accrues on the date of injury and

carries a one year statute of limitations." *Fournier v. Bank of Am. Corp.*, No. 5:13–CV–00702 (TJM), 2014 WL 421295, at *9 (N.D.N.Y. Feb. 4, 2014) (citations and quotation marks omitted).

Here, the Court finds that the Plaintiffs' claim for intentional infliction of emotional distress, at least as against Countrywide, is time-barred. *See id.* (dismissing a claim for intentional infliction of emotional distress brought against mortgage lender as barred by the one-year statute of limitations). This is because the Plaintiffs have not alleged that Countrywide has attempted to foreclose on the subject property, or that Countrywide collected loan payments from the Plaintiffs since November 2011.

Further, as to each of the Defendants, the Court finds that the Plaintiffs have failed to plausibly allege the type of "extreme and outrageous conduct" that can give rise to a common law claim for intentional infliction of emotional distress.

Indeed, "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Bender*, 78 F.3d at 790; *see also Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir.1995) ("We have noted that New York courts have been 'very strict' in applying these elements.")(quoting *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985)). As the Second Circuit recognized in *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999), New York courts have found liability for intentional infliction of emotional distress "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* at 827 (internal quotation marks omitted)(quoting *Howell v. N.Y.*

*Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993) (quoting *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983))).

The Plaintiffs' claim is also defective because "it is anchored to a faulty attack on the mortgage securitization process." *Zbitnoff*, 2014 WL 2119875, at *4.

Accordingly, the Court dismisses the Plaintiffs' claim for intentional infliction of emotional distress.

## H. *The TILA and HOEPA Claims*

Actions for damages under TILA must be filed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The " 'date of the occurrence of the violation' is the date on which the borrower accepts the creditor's extension of credit." *Moseley v. Countrywide Home Loans, Inc.*, Case No. 7:09–cv–210 (FL), 2010 WL 4484566 at *2 (E.D.N.C. Oct. 26, 2010). Also, "HOEPA has a one-year statute of limitations." *Deswal v. U.S. Nat. Ass'n*, No. 13 CV 03354(RJD)(MDG), 2014 WL 1932589, at *2 (E.D.N.Y. May 14, 2014).

Here, the Plaintiffs allege that that the Defendants are liable for violations that occurred during the origination of their loan in December 2007. Accordingly, these claims became, at least as against Countrywide, time-barred in December 2008, and this action was filed more than five years later. *See Simmons*, 2014 WL 509386, at *7 (rejecting TILA claim as time-barred); *Zbitnoff*, 2014 WL 2119875, at *4 (same); *Somarriba*, 2013 WL 5308286, at *8 (same).

Although the Plaintiffs allege that the statute of limitations should be tolled because the Defendants allegedly failed to provide required disclosures (Compl., at ¶ 163), such arguments are routinely re-

jected on the basis "that fraudulent conduct *beyond the nondisclosure itself* is necessary to equitably toll the running of the statute of limitations." *Deswal,* 2014 WL 1932589, at *2; *Grimes v. Fremont Gen. Corp.,* 785 F.Supp.2d 269, 286 (S.D.N.Y. 2011) ("[I]f the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified."); *see Zbitnoff,* 2014 WL 2119875, at *4 (rejecting argument that TILA/HOEPA statute of limitations should be equitably tolled). Therefore, at least as against Countrywide, the Plaintiff's claims under TILA and HOEPA are dismissed for the additional reason of lack of timeliness.

## I. *The RESPA Claim*

The Plaintiffs assert that the "Defendants violated RESPA because the payments between the Defendants were misleading and designed to create a windfall." (Compl., at ¶ 175). Although the Plaintiffs fail to identify the particular provision of RESPA under which they sue, in *Somarriba,* the court determined that the plaintiffs' virtually identical allegations regarding a "windfall" "suggest[ ] that [12 U.S.C.] Section 2607 is the provision under which they make their RESPA claim." *Somarriba,* 2013 WL 5308286, at *9. RESPA provides, in pertinent part:

Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation, except that actions brought by the Bu-

reau, the Secretary, the Attorney General of any State, or the insurance commissioner of any State may be brought within 3 years from the date of the occurrence of the violation.

12 U.S.C. § 2614.

While the Plaintiffs do not allege the date on which the alleged "payments between the Defendants" were made, the Plaintiffs obtained their loan in December 2007 and Countrywide transferred servicing of the loan on December 1, 2011. Thus, December 1, 2012 is the latest date on which a RESPA claim can be asserted against Countrywide, and the Plaintiffs did not bring this action until more than a year later. Accordingly, the Plaintiffs' RESPA claim is dismissed as time-barred, at least as against Countrywide. *See Simmons,* 2014 WL 509386, at *7 (dismissing virtually identical RESPA claim as time-barred running from the date of the mortgage); *Zbitnoff,* 2014 WL 2119875, at *5 (same); *Somarriba,* 2013 WL 5308286, at *9 (same).

## J. *The Rescission Claim*

The Plaintiffs seek rescission of their loan under TILA. (Compl., at ¶ 178.) However, the Plaintiffs concede that any TILA right to rescission lasts only three years from the date of closing of the loan. (*Id.* at ¶ 179); *see* 15 U.S.C. § 1635(f). Thus, because the Plaintiffs' loan closed in December 2007, their right to seek rescission expired in December 2010—more than three years before commencing this action. Accordingly, the Plaintiffs' TILA rescission claim is dismissed as time-barred, at least as against Countrywide. *Simmons,* 2014 WL 509386, at *7 (dismissing TILA rescission claim as time-barred); *Somarriba,* 2013 WL 5308286, at *9–10 (same).

To the extent the Plaintiffs' claim for rescission rests on other causes of action in the complaint, their failure to state a claim as to any of these other claims is also the "death knell" of their rescission claim. *Simmons*, 2014 WL 509386, at *7. Indeed, "[r]escission is only a remedy, not a cause of action." *Zola v. Gordon*, 685 F.Supp. 354, 374 (S.D.N.Y.1988); *see also Procapui–Productores de Camaroes de Icapui Ltda. v. Leyani*, 07–cv–6627 (BSJ), 2010 WL 2720584, at *4 (S.D.N.Y. June 22, 2010) (dismissing a rescission cause of action after dismissing the underlying claims); *Somarriba*, 2013 WL 5308286, at *10 ("To the extent that the Plaintiffs' claim for rescission in Count Ten does not constitute its own cause of action, but rather is a request for relief based on other causes of action in the Complaint—namely, TILA violations and fraudulent concealment—the Count must still be dismissed. Because such underlying causes of action have been dismissed, the request for rescission in Count Ten will likewise be dismissed.").

### K. *Whether the Court Should Grant the Plaintiffs Leave to Replead?*

Under Fed.R.Civ.P. 15(a), leave to replead should be freely given. However, in this case, it is important to note that many of the Plaintiffs' claims fail for multiple reasons—indeed, some have been abandoned, and some are time-barred on their face. The complaint and the memorandum of law in opposition to the motions to dismiss do little, if anything, to address the relevant legal and factual issues, not to mention the binding precedent, *Rajamin*.

Further, the Plaintiffs have "requested leave to amend without any suggestion of what changes such amendment might effect" or how such changes might rescue the complaint. *In re SAIC Inc. Derivative Litig.*, 948 F.Supp.2d 366, 392 (S.D.N.Y.

2013), *aff'd sub nom. Welch v. Havenstein*, 553 Fed.Appx. 54 (2d Cir.2014); *see also In re Goldman Sachs Mortgage Servicing S'holder Derivative Litig.*, 42 F.Supp.3d 473, 487, No. 11 Civ. 4544(WHP), 2012 WL 3293506, at *11 (S.D.N.Y. Aug. 14, 2012) ("Here, Plaintiffs failed to advise this Court of how an amendment would cure defects in the Complaint"). "As a result, the Court has 'no inkling of what [the] amendment might look like or what additional facts may entitle [the Plaintiff] to relief.'" *545 Halsey Lane Properties, LLC v. Town of Southampton*, 45 F.Supp.3d 257, 267, No. 14–CV–2368 (ADS)(GRB), 2014 WL 4629087, at *8 (E.D.N.Y. Sept. 16, 2014) (Spatt, J)(quoting *St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, 745 F.Supp.2d 303, 316 (S.D.N.Y.2010)). "Rule 15(a) is not a shield against dismissal to be invoked as either a makeweight or a fallback position in response to a dispositive motion." *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ. 0318(RJS), 2009 WL 2242605, at *41 (S.D.N.Y. July 27, 2009).

For these reasons, the court has little difficulty exercising its discretion to deny the Plaintiffs' alternative request for leave to replead.

## III. CONCLUSION

For the foregoing reasons, the Court grants the Defendants' motions to dismiss the complaint. The Plaintiffs' alternative request for leave to replead is denied. The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED.**